**Danny J. CRONK, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

No. 3:04–0311.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 23, 2005.

James L. Harris, Nashville, TN, for Danny J. Cronk, Plaintiff.

Anna E. Freeman, Spicer, Flynn & Rudstrom, Nashville, Donald R. Keller, Bricker & Eckler, Columbus, OH, Marc O. Dedman, Spicer, Flynn & Rudstrom, Nashville, TN, for Nationwide Insurance Sales Company, LLC, Allied Insurance, Nationwide Mutual Insurance Company, Defendants.

WISEMAN, Senior District Judge.

## MEMORANDUM

### I. Introduction

Plaintiff Danny J. Cronk ("Cronk") brought suit against Defendant Nationwide Mutual Insurance Company ("Nationwide") on claims of workplace discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Tennessee Human Rights Act ("THRA"), T.C.A. 4-21-101 *et seq.* The Court has jurisdiction under the ADEA; jurisdiction over the THRA claim stems from 28 U.S.C. § 1367. Defendant Nationwide filed a motion for Summary Judgment together with a memorandum of law supporting that motion and containing various affidavits. (Doc. Nos. 15 & 16). Plaintiff Cronk filed a Response to that motion (Doc. No. 20) to which Nationwide has Replied (Doc. No. 22). Also in the record are depositions of Plaintiff Cronk (Doc. No. 18) and Dennis Taylor (Doc. No. 19). Plaintiff Cronk has responded to Defendant Nationwide's Statement of Undisputed Facts (Doc. No. 21). For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

### II. Statement of Facts

Plaintiff Cronk was hired by Allied Insurance as an Automobile Damage Appraiser in Urbandale, Iowa in 1994. At the time of his hiring, Mr. Cronk was 44 or 45 years old. In 1996, Mr. Cronk learned from an Allied partner body shop in

Cookeville, TN that the Nashville Auto Damage Appraiser had been fired. Mr. Cronk had been interested in moving to Nashville for some time and spoke to Alan Taylor, a supervisor with whom he had a relationship, about the incident. During that conversation, Mr. Taylor asked if he was interested in the position. Mr. Cronk replied that he was. Mr. Taylor "passed his name along." After an interview with his immediate supervisor and the supervisor's superior, and a subsequent interview with both them and the department manager, Mr. Cronk was given the Nashville position. In June of 1997, Mr. Cronk's supervisors asked if he was interested in a position as an Auto Casualty Representative. Mr. Cronk accepted the new position.

In 1998, Nationwide Insurance purchased Allied. In June or July of 1999, Mr. Cronk received a notice from Reg Holson, Director of Physical Damage, on the company's internal notice system, SYSM. The notice announced a job opening for a Staff Claims Trainer in the Physical Damage unit. Mr. Cronk responded to the notice by phone. In the following months, Mr. Cronk interviewed with Mr. Holson and Jessy Gonzalez. At the end of the year Mr. Cronk was awarded the position, which was a promotion. Gonzalez became Mr. Cronk's immediate supervisor. Sometime in 2000, Gonzalez was replaced by Michael Ramsey, who had worked in the Urbandale office at the same time as Mr. Cronk and with whom Mr. Cronk was casually acquainted. Mr. Ramsey evaluated Mr. Cronk's performance yearly, always giving him an "achieves" rating.[1] In early 2004, Ramsey left. Terry Allen replaced him as interim supervisor. It was to Mr. Allen that Mr. Cronk e-mailed his resignation on February 18, 2004, effective March 3.

The circumstances leading up to Mr. Cronk's resignation are as follows. In September 2003, Ramsey informed Mr. Cronk that Nationwide was planning to dissolve or disband the Staff Claims department. The details of the restructuring were not finalized at that time, nor did Mr. Cronk learn anything substantial about the future of the department in subsequent discussion with Ramsey or other managers or co-workers. A series of memos issued to everyone in Staff Claims, written by Nationwide Human Resources, indicated that Staff Claims employees might eventually be required to relocate. Ramsey did at some point indicate that it wouldn't be a bad idea for Mr. Cronk to "put some feelers out there" due to the continuing uncertainty. Mr. Cronk continued to check Nationwide's internal job posting and application site on Nationwide's intranet several times a month and also spoke to Taylor to keep abreast of arising opportunities in Nationwide's Nashville office. He learned from Taylor in September of 2003 that a Material Damage Master Claims Representative ("MDMCR") position would be opening in January 2004. Over the next few months, Mr. Cronk discussed the new position with Taylor several times. While they were in St. Louis on business in late 2003, Taylor told Mr. Cronk that he wanted to prepare Mr. Cronk for the interview process by coaching him on which questions to expect. At some point Taylor also advised Mr. Cronk that he would contact Mr. Cronk's supervisor Ramsey regarding his work performance and qualifications; this was never done.

On December 18, 2003, Mr. Cronk returned a call from Taylor. Taylor was at

---

1. Nationwide evaluates its employees performance relative to goals that the employee either "does not achieve," "achieves," or "exceeds." Mr. Cronk received an "achieves" in every area.

the Nashville airport. Mr. Cronk said that he and Taylor needed to discuss the new position since it was expected to open shortly after the new year. Taylor replied, "Well, you know, those people up in Des Moines [regional headquarters], they like the younger guys because they are the real go-getters." Mr. Cronk responded, "So this conversation is basically over about this job?" Taylor answered, "Yeah, you know, I got to go. They are calling my plane." In the meantime, Staff Claims employees had begun to transfer to other positions; by the time Ramsey left in January 2004, at least half of them had transferred to other positions in Nationwide.

The MDMCR position was posted on Nationwide's intranet on February 4, 2004. Mr. Cronk did not apply online. The position was ultimately filled by Brian Randolph, an Allied employee already working in a similar position in Colorado. Mr. Randolph had a very strong recommendation from his supervisor, did not need any training prior to his start date, and had a history of successful performance in his previous position. Mr. Randolph is in his early 30's. He began work on March 18, 2004. Mr Cronk filed the instant lawsuit on April 9, 2004.

### III. *Standard of Review*

A. *Summary Judgment*

The party moving for Summary Judgment must show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003). A *genuine* issue does not exist when the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party has failed to produce evidence sufficient to establish an element of

his claim, Summary Judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A Summary Judgment motion places on the non-movant the burden of producing enough evidence to allow a reasonable factfinder to find in his favor; a mere "scintilla of evidence" will not suffice. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). Contrary to the plaintiff's assertions, "[c]ases involving state of mind issues are not necessarily inappropriate for Summary Judgment". *Id.*

B. *THRA Claims*

Mr. Cronk alleges that Nationwide has violated the federal Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA"). The THRA's stated purpose is to execute within Tennessee the "policies embodied in the ... Age Discrimination in Employment Act of 1967." Tenn.Code Ann. § 4–21–101(a). Tennessee courts have "construed the Tennessee Human Rights Act under the framework of the federal statutes upon which it was patterned, such as the [ADEA]." *Moore v. Nashville Elec. Power Bd.,* 72 S.W.3d 643, 651 (Tenn.Ct.App. 2001); *accord Dennis v. White Way Cleaners, L.P,* 119 S.W.3d 688, 693 (Tenn.Ct. App.2003); *see Bruce v. Western Auto Supply Corp,* 669 S.W.2d 95 (Tenn.Ct.App. 1984) (being the first case to construe the THRA and adopting the use of the *McDonnell Douglas prima facie* framework, along with many other points of law established by cases construing the federal ADEA). Therefore, one analysis will suffice to determine whether Mr. Cronk has sufficient evidence to defeat Nationwide's motion for Summary Judgment on both claims.

C. *Mr. Cronk's claims must proceed under the McDonnell Douglas framework for indirect proof.*

 Violations of the ADEA may be proved by either direct or indirect

evidence. *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least [one of the] motivating factor[s] in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999). In the Sixth Circuit an isolated, ambiguous remark is not direct evidence of age discrimination. *Weigel v. Baptist Hosp. of East Tenn.,* 302 F.3d 367, 382 (6th Cir.2002).

Mr. Cronk alleges only one arguably discriminatory remark. Cronk Depo. at 115. The single statement that management preferred young guys because they are go-getters could be interpreted as a polite way to say "you are not considered by management to be a go-getter," or "you are considered too old." Although the positions of some employees over 40 were eliminated during the restructuring and at other times, this alone does not compel the conclusion that discrimination was a motivating factor in their release. Taylor Depo. at 44–53. Therefore, Mr. Cronk has no direct evidence of age discrimination.

■■■ The indirect evidence framework exists precisely because "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff establishes a *prima facie* ADEA case under *McDonnell Douglas* when he shows that 1) He is over 40 years old, 2) he is performing his job up to his employer's legitimate expectations, 3) he suffers an adverse employment action, and 4) he is replaced by a younger employee. *Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 396 (6th Cir.1993).[2]

### IV. Discussion

#### A. Mr. Cronk has not shown any adverse employment action.

An ADEA plaintiff is required to prove a materially adverse employment action. *Mitchell v. Vanderbilt University,* 389 F.3d 177, 181 (6th Cir.2004). "A 'materially adverse' change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities ... a 'bruised ego' is simply not enough...'" *Id.* at 182 (citations omitted). Under the facts alleged in the complaint, Mr. Cronk might claim either constructive discharge or failure to promote as an adverse employment action.

##### 1. Mr. Cronk's Constructive Discharge Claim

■■■ Constructive discharge occurs when an employee resigns, but does so when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987). For constructive discharge to occur, there must be aggravating factors; bias alone is not enough. *Geisler v. Folsom,* 735 F.2d 991, 996 (6th Cir.1984). Invoking constructive discharge also requires a court find that the employer, in creating the intolerable conditions, acts with intent to cause the employee to resign; foreseeability is considered to be part of that inquiry. *Id.* at 637; *see Collette v. Stein–Mart, Inc.,* 126 Fed.Appx. 678 (6th Cir.2005) (summarizing case law of constructive discharge to

---

**2.** An alternative scheme allows the plaintiff to establish his *prima facie* case by showing that 1) he is over forty years old and 2) he was treated differently than non-protected employees who were similarly situated in all respects. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992). No similarly situated non-protected employee exists in this case.

date). "Mere threats of alleged adverse employment action are generally not sufficient to satisfy the adverse action requirement." *Mitchell*, 389 F.3d at 182. Sixth Circuit precedent precludes a finding of constructive discharge when a plaintiff resigns while a legitimate (not intolerable) offer of continued employment is available to the plaintiff. *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991).

■ The thrust of Mr. Cronk's contention is that he thought he had no future at Nationwide because of the uncertainty of the restructuring process and because of Taylor's isolated statement about the company preferring to hire "younger guys because they are real go-getters." Cronk Depo. at 115. As uncertainty is part of working life, the rumored restructuring can not be considered intolerable; otherwise, every economic downturn or organizational change will result in thousands of constructive discharges. Mr. Cronk admits that the restructuring never resulted in a change in his employment status or benefits; there was only the possibility that he might be subject to such change in the future. Cronk Depo. at 95. Taylor's isolated statement might be considered incidental evidence of discriminatory beliefs held by someone in a decision making capacity at Nationwide, but does not rise to the level of intolerability because there are no aggravating circumstances.

There is no other evidence to support Mr. Cronk's claim. There is no evidence of systematic abuse or unfair criticism. Cronk Depo. at 123, 124. In fact, Mr. Cronk's own deposition tends to show the opposite—that his work environment was good, the atmosphere positive, and that Mr. Cronk enjoyed his job. *Id.* at 123–127. No one at Nationwide forced or encouraged Mr. Cronk to resign, and there is no indication that anyone intended to make his working conditions unpleasant had he

stayed. *See Wilson*, 932 F.2d at 515 (using the same formulation to summarize the evidence and affirming lower court's directed verdict in favor of the defendant). There is no indication that Mr. Cronk could not have kept his position at Nationwide. Therefore, Mr. Cronk's constructive discharge claim must fail.

2. *Mr. Cronk's Failure to Promote Claim*

a. Mr. Cronk did not seek a promotion.

■ Although neither party's brief mentions it, "failure to promote" as an adverse employment action requires that the position sought be a promotion. "In cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action." *Mitchell*, 389 F.3d at 183; *see Moore v. City of Columbus*, 129 Fed.Appx. 978 (6th Cir.2005) (vacating a jury verdict in favor of the plaintiff where the plaintiff was denied a transfer that would not have been a promotion). A plaintiff's desire for the job does not make it a promotion. *Mitchell*, 389 F.3d at 183 ("A plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action").

■ Mr. Cronk nowhere alleges that the MDMCR position he sought would have involved a higher salary, a change in benefits, or increased prestige. The MDMCR would have involved more time spent driving and was not supervisory, unlike the training position Mr. Cronk held when he left. Cronk Depo. 104–07. Mr. Cronk also indicated in his deposition that he did not know the salary for the position and that he would have been willing to take a pay cut to get the new position. *Id.* at 106. The record tends to cast the position as a demotion and contains nothing to

support the assertion that it would have been a promotion. There is no factual basis on the record to assert that Mr. Cronk would have been better off if he had gotten the MDMCR position. Because of this, we cannot reasonably say that Mr. Cronk was denied a *promotion* under the ADEA.

b. Mr. Cronk has not established a foundation sufficient to show Nationwide's reasons for denying him the new position were pretext.

 When a plaintiff establishes a *prima facie* case of discrimination, the defendant must then produce evidence that it acted for a legitimate, non-discriminatory reason. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Assuming for argument's sake that Mr. Cronk had established his *prima facie* case by creating an issue as to whether the position was a promotion, Nationwide has given a legitimate reason for offering the job to Mr. Randolph instead of Mr. Cronk. Mr. Randolph was a very strong candidate. He was already working in an equivalent job in Colorado and was not expected to require training. Taylor Depo. at 69–70. His supervisor gave him a recommendation that was nothing short of glowing; he described Mr. Randolph as "one of the top performers in each unit in which he has worked" and "one of the best APD employees in the [Regional Office]." *Id.* at 67–69; *Id.* at Exhibit 2. Mr. Cronk's performance evaluations, on the other hand, show him to have been an adequate, not exemplary, employee. Taylor Depo., exhibits 3–4. Even allowing for the differences in the two men's experience in the field,[3] choosing Randolph was not outside the bounds of rational, nondiscriminatory business practice.

To proceed, Mr. Cronk must be able to show that a reasonable finder of fact could conclude that the above reasons were a pretext for age discrimination. He may do so by showing that defendant's articulated reasons have no basis in fact, that the reasons were jointly insufficient to reasonably be the true cause, or that the proffered explanation is just a cover for the discriminatory intent that was the true motivation. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir.1986). The facts surrounding Randolph's transfer are not in dispute. Those facts are sufficient to be the true causes. Mr. Cronk must therefore prove that Nationwide was in fact motivated by discriminatory intent both to rebut Nationwide's proffered explanation and to carry his ultimate burden of persuasion at trial.[4]

The only evidence in the record that can be considered probative is the single statement by Taylor that higher-level managers preferred younger workers because they were go-getters. This single piece of indirect evidence (which is probably hearsay) is too weak a foundation to support a verdict in Mr. Cronk's favor.

## V. *Conclusion*

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate ORDER will enter.

---

3. Mr. Cronk had been working in insurance generally for about 20 years, Randolph in a practically identical position for about 3.

4. Although "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose," in this instance only the evidence of discriminatory purpose can establish pretext and the inquiries merge. *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Therefore, in granting Summary Judgment for the defendant, this court is in effect holding that Mr. Cronk cannot carry his ultimate burden of persuasion at trial.

### ORDER

Plaintiff Danny J. Cronk brought suit against Defendant Nationwide Mutual Insurance Company on claims of workplace discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Tennessee Human Rights Act ("THRA"), T.C.A. 4–21–101 *et seq.* The Court has jurisdiction under the ADEA; jurisdiction over the THRA claim stems from 28 U.S.C. § 1367. Defendant Nationwide has filed a Motion for Summary Judgment. (Doc. No. 15)

For the reasons set forth in the accompanying Memorandum, Defendant's Motion for Summary Judgment is GRANTED.

It is so ordered.