RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0386p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WILLIAM M. MITCHELL, M.D., PH.D.,

*Plaintiff-Appellant*,

v.

No. 03-5503

VANDERBILT UNIVERSITY,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-01578—Robert L. Echols, Chief District Judge.

Argued: September 22, 2004

Decided and Filed: November 10, 2004

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Tyree B. Harris IV, WILLIS & KNIGHT, Nashville, Tennessee, for Appellant. William N. Ozier, BASS, BERRY & SIMS, Nashville, Tennessee, for Appellee. **ON BRIEF:** Alfred H. Knight, Janna E. Smith, WILLIS & KNIGHT, Nashville, Tennessee, for Appellant. William N. Ozier, BASS, BERRY & SIMS, Nashville, Tennessee, John C. Callison, VANDERBILT UNIVERSITY, OFFICE OF GENERAL COUNSEL, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Dr. William M. Mitchell appeals the district court's summary judgment in favor of the defendant, Vanderbilt University, in this action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. We conclude that Mitchell has failed to allege any adverse employment action and we therefore AFFIRM the summary judgment of the district court.

I.

Dr. William M. Mitchell, a sixty-nine-year-old member of the Pathology Department at Vanderbilt University, has filed this case against Vanderbilt University alleging age discrimination, based on a number of actions primarily taken by his superior, the department chairman, Dr. Doyle Graham.

Mitchell first joined the faculty of Vanderbilt School of Medicine as an assistant professor in 1966, and received a promotion to Professor of Pathology in 1978. In 1995, Vanderbilt hired Graham as the new chairman of the Pathology Department. Soon after this appointment, Graham asked Mitchell whether he was considering early retirement and Mitchell stated that he had no intention of retiring at any time.

Since that initial meeting, Mitchell claims that Graham engaged in a series of actions constituting age discrimination. According to Mitchell, Graham's discriminatory attitude towards older employees was first observed in late 1997, when Graham had a meeting with Dr. Anh Dao, a colleague of Mitchell's in the Department of Pathology. During that meeting, Graham allegedly asked Dao whether he was ready for retirement. After Dao expressed to Graham a desire to continue working past his sixty-fifth birthday, Graham allegedly told Dao that "people should retire once they reach sixty-five years of age because they are not productive after sixty-five."

Following that initial remark to Dao, Mitchell claims that Graham took specific adverse employment actions aimed directly at him. First, in 1998, Graham removed Mitchell as a mentor of the M.D./Ph.D. and Ph.D graduate programs. Second, Graham prevented a M.D./Ph.D student from conducting research in Mitchell's laboratory, which Mitchell claims could have helped him in an application for a National Institutes of Health grant. Third, on January 13, 1999, Graham sent a letter to Mitchell ordering him to vacate his laboratory and office space and giving Mitchell several employment options, all of which involved reducing his salary and several of which included early retirement. Vanderbilt claims that the reason for this letter was that a medical faculty member is expected to bring in at least 80% of his/her salary from grants, and Mitchell had not contributed more than 25% of his salary from funded research since 1990. As further evidence of discrimination, Mitchell points to Graham's own copy of the January 13 letter on which Graham handwrote in the margins that Mitchell "will be 65 in another year," noting his date of birth and the date on which Mitchell would turn sixty-five.

Following receipt of the January 13 letter, Mitchell refused to choose one of the employment-altering options and filed a grievance with the Vanderbilt Faculty Senate's Professional Ethics and Academic Freedom Committee ("Faculty Committee"), claiming that Graham had engaged in age discrimination. While that grievance was pending before the Faculty Committee, Mitchell requested that Graham consider him for the vacant position of Medical Director of Clinical Laboratories. On March 19, Graham sent Mitchell another letter in which Graham notified Mitchell that he had not been chosen for the position, and that because Mitchell had not selected one of the employment modification options presented in the January 13 letter, he was going to change Mitchell's appointment to Full Status, Partial Load with a salary reduction of 49% and decrease his laboratory space as planned.

After learning of the changes and reductions in Mitchell's laboratory space and status, the Faculty Committee sent a letter dated June 23 to several University administrators, including the Dean of the School of Medicine John Chapman, the Associate Vice-Chancellor of Research Lee Limbird, and Graham. The June 23 letter requested that the administrative actions be postponed until after the Faculty Committee had completed its investigation of Professor Mitchell's grievance. In response to the June 23 letter from the Faculty Committee, Chapman, Limbird and Graham agreed that while there would be no change in Mitchell's appointment or salary, the planned reduction of laboratory space would be implemented because they found that Mitchell's research effort did not warrant the level of laboratory space assigned to him. As the district court observed, at the time of the events at issue here Mitchell had not received a significant research grant award in roughly four years.

After negotiations between Mitchell and University officials failed, Limbird advised Mitchell in a letter dated July 9 that his laboratory space would be reduced from 2000 square feet to 150 square feet. The letter did, however, assure Mitchell that additional lab space would be ensured if he secured future grants.

Mitchell timely filed an Equal Employment Opportunity Commission charge on July 22, 1999. On August 9, Graham removed Mitchell as Medical Director of Vanderbilt Pathology Laboratories Services.

In an e-mail message to Mitchell on that date, Graham also stated his intention to appoint Mitchell to the position of Medical Director of the Bedford County Hospital Laboratories, an apparently undesirable post that would require travel away from Vanderbilt.

Following this action, Mitchell filed a second charge with the Equal Employment Opportunity Commission on August 19 alleging that the alleged adverse employment actions that occurred that month were retaliatory. On or about January 19, 2000, Graham placed a special requirement on Mitchell, requiring that all National Institutes of Health grant applications submitted by Mitchell were to be reviewed by Graham. Graham claims that the restriction was needed to prevent misstatements and hurriedly prepared proposals.

On October 11, 2000, Mitchell filed a second grievance with the Faculty Committee seeking an order to preserve his laboratory space. On December 11, the Faculty Committee denied the first grievance filed by Mitchell regarding the reduction in laboratory space, finding that the office space was assigned on the nondiscriminatory basis of research funding. On February 12, 2001, the Faculty Committee denied Mitchell's second grievance, allowing the University to reassign Mitchell's laboratory space.

## II.

After receiving a right-to-sue letter in September of 2001, Mitchell filed this complaint in the United States District Court for the Middle District of Tennessee on December 18, 2001, alleging that Vanderbilt violated the Age Discrimination in Employment Act, 28 U.S.C. 623(a), by reducing his research lab space, threatening to reduce his salary, removing him as a mentor of the M.D./Ph.D program, denying him the opportunity to work with a new M.D./Ph.D student, trying to force him to take early retirement, and failing to appoint him to the position of Medical Director for Clinical Laboratories. Mitchell also claimed that Graham retaliated against him for filing the discrimination charge by removing him from the position of Medical Director for Pathology Laboratory Services, appointing him to the position of Medical Director for the Bedford County Hospital Laboratories, and by not selecting him as Medical Director of Clinical Laboratories.

The district court granted Vanderbilt's motion for summary judgment in an order entered on March 18, 2003, finding insufficient direct or circumstantial evidence to establish a claim for age discrimination or retaliation. On appeal, Mitchell claims that the district court erred in granting summary judgment because he presented evidence of discriminatory animus and adverse employment actions that, if considered independently or collectively, is sufficient to defeat Vanderbilt's motion for summary judgment.

## III.

A district court's grant of summary judgment is subject to de novo review by this Court. *Williams v. London Util. Comm'n*, 375 F.3d 424, 427 (6th Cir. 2004). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When reviewing the record, all inferences are to be drawn in the light most favorable to the nonmoving party. *Timm v. Wright State Univ.*, 375 F.3d 418, 422 (6th Cir. 2004). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue for trial." *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 414 (6th Cir. 1999).

The Age Discrimination in Employment Act makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may meet his evidentiary burden under the Act in one of two ways. One the one hand, a plaintiff may offer direct evidence of the employer's discriminatory motive by producing "evidence, which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the

employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

If, on the other hand, a plaintiff is unable to provide direct evidence of an improper motive, he may offer indirect and circumstantial evidence of such a motive pursuant to the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to establish a prima facie case of age discrimination using circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that: (1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class. *Id.* at 802; *accord Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 731 (6th Cir. 2000). Because we find that Mitchell has not suffered an adverse employment action as a matter of law as required whether the plaintiff uses direct or circumstantial evidence to meet his evidentiary burden, we affirm the district court's grant of summary judgment for Vanderbilt.

IV.

In order to establish a prima facie case of age discrimination using either direct or circumstantial evidence, a plaintiff must show that he was subjected to an adverse employment action. *See, e.g., Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 n.1 (6th Cir. 2002) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)). On appeal, Mitchell alleges several adverse employment actions: (1) the reduction in his allotted research lab space; (2) the revocation of his mentor status; (3) the loss of his graduate research assistant; (4) the proposed, but unimplemented reduction in pay and appointment to the Bedford County Hospital Laboratories; (5) the forced review of his National Institutes of Health grant applications; (6) his removal from the position of Medical Director of Pathology Services; and (7) his non-selection as Medical Director of Clinical Laboratories. For the following reasons, Mitchell has failed to present sufficient evidence suggesting that he suffered an adverse employment action and therefore summary judgment in favor of Vanderbilt was proper.

An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Under this standard, a "materially adverse" change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 886. (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). As this Court recently pointed out, a "bruised ego" is simply not enough to constitute an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis*, 97 F.3d at 886).

Viewing the challenged actions either independently or collectively, we hold that Mitchell has failed to allege a materially adverse employment action in the instant case. First, Mitchell's allegations that Vanderbilt deprived him of a graduate research assistant during one summer, revoked his mentor status in the M.D./Ph.D graduate program, and removed him from his position of Medical Director of Pathology Laboratory Services simply do not amount to adverse employment actions. As we have pointed out, a "mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Kocsis*, 97 F.3d at 886. As the district court found, there is no evidence to suggest that these actions significantly diminished Mitchell's material responsibilities at Vanderbilt. Second, requiring Mitchell to submit for internal review all research applications does not rise to the level of an adverse employment action. Because of Vanderbilt's concerns about Mitchell's history of hurriedly prepared grant applications, the internal submission requirement is properly considered good institutional administration rather than a materially adverse employment action.

Third, Graham's proposals to reduce Mitchell's pay, alter his employment status, and reassign him to serve as Medical Director for the Bedford County Hospital Laboratories were never implemented and therefore not adverse employment actions. Mere threats of alleged adverse employment action are generally not sufficient to satisfy the adverse action requirement. In *Burlington Northern*, this Court rejected the "ultimate employment decision" requirement in Title VII cases, finding that an employee who was suspended without pay had suffered an adverse employment action despite subsequently being reinstated with back pay. *Burlington Northern*, 364 F.3d at 801. Unlike the plaintiff in *Burlington Northern*, Mitchell never suffered an adverse employment action because the proposed actions challenged here were never implemented. Therefore, those actions do not constitute adverse employment actions.

Fourth, the district court was also correct to conclude that the reduction in Mitchell's lab space—from 2000 square feet to 150 square feet—did not amount to an adverse employment action. Mitchell has pointed to no evidence suggesting that the reduction in laboratory space had a materially adverse effect on his salary or status of employment at Vanderbilt. To the contrary, Mitchell remains a tenured member of the Vanderbilt faculty and has not been subject to any reduction in employment benefits. While the reduction in laboratory space likely had an initial effect on Mitchell's ability to conduct research, this, without more, does not constitute a materially adverse employment action.

Moreover, Vanderbilt has offered a legitimate and nondiscriminatory explanation for the reduction in Mitchell's laboratory space; namely, Mitchell's failure to secure research grants to support his salary. Testimony by several Vanderbilt officials indicated that the University generally expects its doctors to provide approximately 80% of their salary from external funds. As the district court pointed out, Mitchell had not reached those levels at least since 1995, indicating that Mitchell was underproductive and was not qualified for his allotment of lab space. Therefore, even assuming that the reduction in research space was an adverse employment action, Mitchell was not qualified to receive his previous allotment of lab space and therefore fails to state a claim for age discrimination based on the reduction of his laboratory space.

Finally, Mitchell's non-selection for the position of Medical Director of Clinical Laboratories was not a materially adverse employment action. The district court apparently concluded that the non-selection was an adverse employment action, declining to consider, at least expressly, whether appointment to that position would constitute a promotion. Non-selection for a position of employment is not always an adverse employment action. In cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action. *See Sherman v. Chrysler Corp.*, 47 Fed. Appx. 716, 721-22 (6th Cir. 2002) (holding that an employee who failed to introduce evidence showing that denials of lateral transfer requests resulted in materially adverse changes in terms of employment could not establish adverse employment action).

Mitchell has produced no evidence to show that appointment to the position of Medical Director of Clinical Laboratories would have been a promotion. While Vanderbilt at oral argument acknowledged that the position would involve some different duties, we find nothing to indicate that the appointment would have provided an increased salary, significantly changed responsibilities, a more distinguished title, or a gain in benefits. *See Kocsis*, 97 F.3d at 886 (noting factors to consider when determining whether an employee has suffered an adverse employment action). And while Mitchell's mere application for the position indicates that he may have considered the appointment desirable, a plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action. *See, e.g., Policastro*, 297 F.3d at 539; *Henry v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 162 F. Supp. 2d 794, 801 (S.D. Ohio 2000) (citing *Kocsis*, 97 F.3d at 886). Thus, because Mitchell has not presented evidence that establishes a question as to whether the denial of this appointment was materially adverse, summary judgment for Vanderbilt was proper.

Even if Mitchell had established a prima facie case of age discrimination based on his non-selection as Medical Director of Clinical Laboratories, we note that Mitchell's age discrimination claim could not succeed. Vanderbilt presented evidence under the second stage of the *McDonnell Douglas* framework

articulating a legitimate, nondiscriminatory reason for not hiring Mitchell. According to Vanderbilt, Mitchell was not the best qualified applicant for the position because of his dislike of administrative duties, his apparent disinterest in clinical work, and his tendency to arrive late to meetings. These documented reasons satisfy Vanderbilt's burden to produce nondiscriminatory reasons for the employment decision. Once the employer makes such a showing, the burden then shifts back to the plaintiff to show that the employer's reasons are pretextual. To do so, the plaintiff is required to show either: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Here, Mitchell has failed to produce any evidence from which a jury reasonably could find that the employer's reasons were pretextual. Therefore, summary judgment for Vanderbilt was proper.

V.

For the foregoing reasons, we AFFIRM the summary judgment of the district court.