OPINION
McKEAGUE, Circuit Judge.
Plaintiff Jerry Freeman sued the Postmaster General of the United States Postal Service (the “Postal Service”), alleging that the Postal Service discriminated against him by failing to transfer him to another position, in violation of the Age Discrimination in Employment Act of 1967 (“ADEA”), 29 U.S.C. § 633a, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. The district court granted summary judgment in favor of the Postal Service, finding that Freeman did not suffer an adverse employment action, and therefore did not carry his prima facie burden. Freeman appealed.
For the reasons set forth below, we affirm.
I.
Freeman was Supervisor of Customer Service at the Murfreesboro, Tennessee Post Office and had worked for the Postal Service for more than twenty-five years when he applied for the position of Postmaster of Sewanee, Tennessee. He was fifty-two years old at the time.
Salaried employees of the Postal Service each have a ranking on the “Executive and Administration Schedule” or “EAS,” a pay and duty schedule. As a Supervisor in Murfreesboro, Freeman held a ranking of EAS-16. The Sewanee position was ranked as an EAS-15. This meant that the salary for the Postmaster position was lower than the salary he received in his current Supervisor position.
In his application for the Postmaster position, Freeman listed the following highlights of his duties as a Supervisor:
• supervise and schedule thirty-nine rural carriers on a daily basis;
• supervise five full-time and five part-time window clerks;
• supervise several Special Event Programs, including special cancellations for the Civil War, the Stones River National Battlefield, and the Uncle Dave Macon Days stamps; and
• was responsible for bar code sorter machines, qualifying part-time distribution clerks, and various educational tours.
During his deposition, Freeman estimated that an EAS-15 Postmaster might have responsibility for two rural carriers, a box section, and two or three window clerks.
Freeman grew up ten or twelve miles from Sewanee and knew many of the people who lived there. He testified that he sought the lower-paying position because it would give him better advancement opportunities in the future. He noted that Postmasters have their own meetings, and, if selected, he would be able to participate in *441 those meetings. He also wanted the opportunity to run his own office, explaining that it would have less pressure. He testified that he had planned to apply for a higher-level Postmaster position within a couple of years of becoming the Sewanee Postmaster.
Bonnie Layne, a Postmaster near Sewanee, testified by affidavit that the Sewanee Postmaster position was “a unique and desirable position.” She further testified:
In general, postmaster positions in the United States Postal Service are considered desirable and are sought after even in preference to supervisor positions. This is because as a postmaster you are the on site person responsible for running the location and have no supervisor on site to whom you must report. Further, in my experience, being a postmaster is considered prestigious. Because of this, it does not surprise me that a supervisor in the United States Postal Service would be willing to take an initial marginal decrease in salary to obtain a postmaster position.
She also noted that the proximity to a small university made the position “unique and more prestigious.”
Another applicant for the Sewanee position, Wanda Eisler (also an EAS-16 at the time), testified that she wanted the job because being a Postmaster was her ultimate goal. She explained that she wanted a small office.
The Postal Service did not select Freeman or Eisler for the Postmaster position, offering it instead to a thirty-one year old female. Freeman filed an administrative complaint, alleging age and reverse-sex discrimination. The ALJ determined that the Postal Service did not discriminate against him based on his sex, but agreed with Freeman that it discriminated against him based on his age. As the remedy, the ALJ required that the Postal Service offer Freeman the Sewanee Postmaster position. It did so, but Freeman declined the position, opting instead to sue the Postal Service, alleging workplace discrimination and seeking back pay and benefits, front pay, compensatory damages for emotional and reputational injury, attorney fees, and expenses.
II.
A. Fed. R. Civ. P. 56
The court reviews de novo the district court’s grant of summary judgment. Rowan v. Lockheed, Martin Energy Sys., Inc., 360 F.3d 544, 547 (6th Cir.2004) (citations omitted). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R. Civ. P. 56(c). The court reviews the evidence and draws all reasonable inferences in favor of the nonmoving party. Rowan, 360 F.3d at 547 (citation omitted). “That is not to say that it only reviews evidence favorable to the non-moving party. Instead, it must review all the evidence in the record.” Id. (citation omitted).
B. Adverse Employment Actions—In General
The ADEA prohibits federal employers, including the Postal Service, from discriminating against an employee “based on age.” 29 U.S.C. § 633a. Title VII likewise prohibits discrimination based on, among other things, an individual’s gender. 42 U.S.C. § 2000e-16(a). The legal standards governing both types of discrimination are similar. See Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996).
A plaintiff may establish age— or gender-based discrimination in two different *442 ways. He may offer direct evidence of the employer’s discriminatory motive by producing “evidence, which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer’s actions.” Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir.2004) (quoting Wexler v. White’s Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir.2003) (en banc)). If he cannot come forward with direct evidence of a discriminatory motive, he may offer indirect and circumstantial evidence of such a motive under the familiar McDonnell Douglas burden-shifting approach. Id. (citation omitted). Under the latter approach, the employee must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position sought; and (4) he was treated differently from similarly situated employees outside the protected class. McClain v. North-West Cmty. Corr. Ctr. Judicial Corr. Bd., 440 F.3d 320, 332 (6th Cir.2006). The elements of a prima facie case are fact-specific and differ from case to case. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir.1999).
The sole issue presented to us on appeal is whether Freeman has offered sufficient evidence to create a genuine issue of material fact that he suffered an adverse employment action. An adverse employment action “constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (citations omitted). Such action usually “inflicts direct economic harm.” Id. at 762, 118 S.Ct. 2257. An employment action must amount to “a materially adverse change” in the terms or conditions of employment to be actionable. Kocsis, 97 F.3d at 885; see also Mitchell, 389 F.3d at 182. The action “must be more disruptive than a mere inconvenience or an alteration of job responsibilities.” Kocsis, 97 F.3d at 886 (internal quotations omitted). A “de minimis employment” action is “not materially adverse and, thus, not actionable.” Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). In other words, a “bruised ego” caused by trivial employment actions is not sufficient. Kocsis, 97 F.3d at 886 (citing Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir.1994)).
Yet, an employee need not have suffered one of the “ultimate employment actions” listed above (e.g., termination, demotion, failure to promote, etc.) to have a viable claim of discrimination. A material adverse action may consist of a less distinguished title, diminished options for advancement, or other unique indices. Bowman, 220 F.3d at 461-62; Hollins v. Atl. Co., 188 F.3d 652, 662 (6th Cir.1999). Importantly, however, an individual’s “subjective impression concerning the desirability of one position over another” is insufficient to render an employer’s action materially adverse. Mitchell, 389 F.3d at 183; see also Policastro v. Nw. Airlines, Inc., 297 F.3d 535, 539 (6th Cir.2002). Rather, we determine whether a particular employment action was “objectively intolerable to a reasonable person.” Policastro, 297 F.3d at 539; see also O’Neal v. City of Chicago, 392 F.3d 909, 913 (7th Cir.2004) (explaining that an employee’s “purely subjective preferences for one position over another” does not “justify trundling out the heavy artillery of federal antidiscrimination law” (internal quotations omitted)); Brown v. Brody, 199 F.3d 446, 457 (D.C.Cir.1999) (explaining that an employee must suffer “objectively tangible harm” to have a viable discrimination claim).
In short, the action must have a “significant detrimental effect” on the employee’s *443 status, Boone v. Goldin, 178 F.3d 253, 256 (4th Cir.1999), as evidenced by objective factors, not subjective impressions.
C. Did Freeman Suffer an Adverse Employment Action?
To support his claim, Freeman points to a single action by the Postal Service: its decision not to transfer him to the Sewanee Postmaster position. As in prior cases involving a request for a new position within the same employer organization, we view Freeman’s claim as one grounded on a failure to promote/transfer, as opposed to one based on a failure to hire.[1] See, e.g., Browning v. Dep’t of Army, 436 F.3d 692, 695-96 (6th Cir.2006); White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 240 (6th Cir.2005); Mitchell, 389 F.3d at 183.
In general, a lateral transfer, or the refusal to make a lateral transfer, is not a materially adverse action. Mitchell, 389 F.3d at 183.[2] Freeman offers no evidence *444 that the refusal-to-transfer denied him a promotion, at least in any official sense. He points to no policy or procedure of the Postal Service suggesting that it would consider a move from an EAS-16 Supervisor to an EAS-15 Postmaster a promotion. The Sewanee Postmaster position paid less, and thus, from a purely financial perspective, the transfer would have been a demotion. Freeman argues, however, that in spite of the loss of pay, the Sewanee Postmaster position was unique for two main reasons: (1) it was prestigious; and (2) the experience would have given him opportunities for higher-paying Postmaster positions. The two factors are analyzed in turn.
1. Prestige
Freeman cites this court’s statement in Mitchell that “[i]n cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action.” 389 F.3d at 183 (citation omitted, emphasis added). Other courts have similarly noted that “prestige” and “loss of title” can amount to adverse employment action under some circumstances. See, e.g., Bryson, 96 F.3d at 916; de la Cruz, 82 F.3d at 21.
“Prestige,” much like beauty, is in the eye of the beholder. It is the “standing or estimation in the eyes of people.” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY (1986). Yet, because we rely upon objective factors, rather than subjective impressions, we must look underneath an assertion of “prestige” to determine whether there is anything concrete to substantiate it. For example, *445 does a particular title entail greater responsibilities, have unique characteristics, or require special training or education? See, e.g., White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 803 (6th Cir. 2004) (en banc) (noting that the higher level of qualifications needed for a position was an indication of the position’s prestige), aff'd, - U.S. -, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (explaining that negative public perception alone does not amount to an adverse employment action). Further, an employee must show that the target position had, in some sense, more prestige than the employee’s current position. If the two positions have the same level of prestige, the refusal to transfer the employee from one prestigious position to an equally prestigious position cannot have an actionable effect on the employee’s career. See Kocsis, 97 F.3d at 887 (noting the failure of the employee “to make a real attempt to compare the two positions” before filing suit).
Here, Freeman offers several reasons why the Postmaster position in general, and the one in Sewanee in particular, was prestigious. He testified that as a Postmaster, he would be “in the limelight” in terms of controlling the office, making budgets and plans, and increasing revenues. Layne reiterated this, as well as stating that the position’s proximity to a small university also made it prestigious.
Being the head of an office with responsibility for its budget and plans can be prestigious. Of course, so can being a supervisor in a large office with responsibility for thirty-nine carriers, ten window clerks, and various special event programs and educational tours. Moreover, the fact that he was paid more as a Supervisor in Murfreesboro is at least some evidence of its prestige vis-a-vis the Sewanee Postmaster position. While Layne testified that Postmaster positions are considered desirable and are sought after even in preference to supervisor positions, this is simply a statement about postmaster positions in general. She did not offer any specific comparison between the prestige of the two particular positions at issue here— Freeman’s Supervisor position (or one similar to it in terms of size of office and responsibñities/qualifications) against the Sewanee Postmaster position.
The evidence that the Sewanee Postmaster position is prestigious because it is located near a small university is entirely conclusory. Freeman provides no evidence or explanation of why a Postmaster who works in an office serving a university is more prestigious than the same position in a neighboring town or city without a university. There is no description of additional or special tasks the Postmaster must perform for the school, special access the Postmaster might have to school facilities, or any other objective indicia of prestige bestowed upon the Postmaster by the Postal Service, university, or community. Moreover, unlike a typical vendor for a college or university, the Postmaster cannot tout its office’s selection by the school as some sign of excellence, given that the Postal Service has a federally-chartered monopoly in delivering mail. The position may be more desirable because it is located in a university town with, for example, ready access to collegiate athletic events, arts, community lectures, etc., but simply because a position is desirable to someone does not make the failure to get it actionable. Mitchell, 389 F.3d at 183.
It is Freeman’s burden to show that the refusal-to-transfer resulted in him having to stay in a less prestigious position. He has not met his burden.
2. Experience
Freeman also argues that the experience he would have gained as the Sewanee *446 Postmaster would have given him more opportunities for future promotion. The refusal to transfer, like an involuntary transfer, can amount to an adverse employment action if it significantly reduces the employee’s career prospects. See, e.g., O’Neal, 392 F.3d at 911. The Postal Service provided numerous examples of Supervisors at or below Freeman’s EAS rank moving to the position of Postmaster. Freeman admitted during his deposition that his belief that the Sewanee Postmaster position would have given him an opportunity to advance was speculation. Furthermore, as explained above, Layne’s testimony does not evidence that Freeman’s own prospects for advancement were hindered in any non-trivial way. Again, it was Freeman’s burden to compare the two positions and offer objective indications of the superiority of one over the other. Kocsis, 97 F.3d at 887. He did not do so.
3. Freeman Has Not Shown a NonTrivial Impact on his Career
In sum, Freeman has provided some evidence that a Postmaster is generally considered a prestigious position in the Postal Service, and that the Sewanee Postmaster position is a desirable one. What he has not done is come forward with evidence of objective indicia which would show: (a) that the Sewanee Postmaster position was more prestigious than his own position; or (b) that the experience of being a Sewanee Postmaster would significantly enhance his career opportunities more than his current position. Accordingly, Freeman has not made his prima facie case of discrimination.
III.
For the foregoing reasons, we AFFIRM summary judgment in favor of the Postal Service.

. In his dissent, Judge Clay suggests that we are breaking new ground by requiring that Freeman present evidence that the Postal Service denied him a promotion or took some other tangible action that had a significant detrimental effect on him, and not just that it denied him a transfer. On the contrary, it is Judge Clay who proposes, in effect, that we depart from this circuit’s precedent, as well as the guidance provided by the Supreme Court.
In Mitchell, an earlier, published decision of this court to which we are bound to follow, a medical school professor sued his university employer for age discrimination. As part of his prima facie case, the plaintiff relied upon, among other things, his non-selection for an internal transfer to become the medical director of a laboratory. The court found the plaintiff’s evidence to be insufficient to establish his prima facie case, explaining:
Non-selection for a position of employment is not always an adverse employment action. In cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action. See Sherman v. Chrysler Corp., 47 Fed.Appx. 716, 721-22 (6th Cir.2002) (holding that an employee who failed to introduce evidence showing that denials of lateral transfer requests resulted in materially adverse changes in terms of employment could not establish adverse employment action).
Mitchell, 389 F.3d at 183. Simply put, the Mitchell decision cannot be squared with the dissent's approach.
Even if we were not bound by Mitchell, the proper approach would still be the one we employ here. The Supreme Court has provided guidance to lower courts on what constitutes an adverse employment action. In Ellerth, the Supreme Court did not limit the category of such actions to the obvious ones of "hiring” and "firing,” but also, among other actions, "failing to promote.” 524 U.S. at 761, 118 S.Ct. 2257. As a textual matter, the Court’s inclusion of "failing to promote” in this category would have been superfluous if it intended for lower courts to treat all claims involving the denial of a requested internal transfer as simply "hiring” claims. Moreover, it would breed considerable confusion in the law to conflate external hiring and internal transfers into one broad "hiring” camp, especially when the Supreme Court has counseled (at least implicitly) otherwise.
Thus, we agree with the dissent that the prima facie test is a "flexible” one, and must be applied in an "orderly way to evaluate the evidence.” Dis. at 2-3. The test must be tailored to meet the demands of the particular claim before the court. In the instant action, we have tailored the prima facie test to the claim before us, using our own precedent and the Supreme Court’s guidance on what constitutes an adverse employment action. To try to consider Freeman’s claim under some broad, rigid "hiring” framework would, in effect, be to force a square peg into a round hole.
Finally, we note that Freeman did not argue on appeal that his was a failure to hire claim. Rather, he repeatedly referred to the "unique” and "prestigious” nature of the position, and cited several transfer-related cases in support.

. Given the fact-specific nature of the inquiry, there are a number of cases that have concluded that a transfer or refusal-to-transfer *444 did not constitute an adverse employment action, and a number that have found such employer action was adverse. Compare O’Neal, 392 F.3d at 912 (rejecting for lack of “objective evidence” the employee's claims that her involuntary transfer resulted in a less prestigious job and negatively affected her advancement opportunities); Mitchell, 389 F.3d at 182 (finding no adverse action from a professor’s allegations that the university "deprived him of a graduate research assistant during one summer, revoked his mentor status in the M.D./Ph.D graduate program, and removed him from his position of Medical Director of Pathology Laboratory Services”); Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir.2004) (finding no adverse action when employee wanted transfer for personal reasons and transfer would have resulted in lower pay); Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) ("[A] decision made by an employer that only limits an employee’s opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII.”); Momah v. Dominguez, 175 Fed.Appx. 11, 21-22 (6th Cir.2006) (finding no adverse action when requested transfer would have been a demotion and was sought for personal reasons); Wanchik v. Great Lakes Health Plan, Inc., 6 Fed.Appx. 252, 258-59 (6th Cir.2001) (finding no adverse action when corporate acquisition resulted in the employee transferring from CEO of the target company to vice president of the acquiring company), with Jones, 198 F.3d at 411-12 (finding an adverse employment action when a teacher was transferred to a "difficult school” teaching "less desirable science classes” and was passed over for promotion); Davis v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir.1997) (upholding jury verdict, explaining that "[t]he jury apparently put more weight on Davis’s evidence that the new position lacked supervisory status, had fewer opportunities for salary increases, and offered Davis little opportunities for advancement.”); Bryson v. Chicago State Univ., 96 F.3d 912, 916 (7th Cir. 1996) (concluding that an employee’s "sudden loss” of the title Special Assistant to the Dean and her banishment from university committee work could constitute adverse employment action); de la Cruz v. N.Y. City Human Res. Admin. DSS, 82 F.3d 16, 21 (2d Cir. 1996) (finding that the involuntary transfer of a caseworker from the adoption unit to the foster care unit could be an adverse employment action because of the lower prestige and “little opportunity for professional growth” in the new unit, but also noting that the employee’s case was "quite thin”).