**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0882n.06

**No. 11-3002**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| SHERYL L. SZEINBACH, | ) | **FILED**<br><br>**Aug 10, 2012**<br><br>LEONARD GREEN, Clerk |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | **ON APPEAL FROM THE UNITED** |
|  | ) | **STATES DISTRICT COURT FOR THE** |
| OHIO STATE UNIVERSITY, | ) | **SOUTHERN DISTRICT OF OHIO** |
|  | ) |  |
| Defendant-Appellee. | ) |  |

**BEFORE: WHITE, STRANCH, and FARRIS[*], Circuit Judges.**

**HELENE N. WHITE**, Circuit Judge. Sheryl Szeinbach appeals from the order granting summary judgment, dismissing her Title VII retaliation and retaliation-by-association claims against her employer, Defendant Ohio State University (OSU).[1] The magistrate judge[2] granted summary judgment on the sole ground that Szeinbach failed to establish a prima facie case, specifically an adverse employment action. We affirm in part and reverse and remand in part.

**I**

---

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[1]Szeinbach does not challenge the magistrate judge's determination that her arguments in response to OSU's summary-judgment motion were limited to her retaliation claims. R. 182 at 15 n.6. Szeinbach thus appears to have abandoned her sex-discrimination claim.

[2]The parties consented to disposition of this case by a magistrate judge. PID# 227.

OSU hired Dr. Szeinbach in 1999 as a full professor with tenure in the College of Pharmacy (COP), and later hired Dr. Enrique Seoane-Vasquez (Seoane) as an Assistant Professor in the COP in 2002. Seoane, who is from Spain and of Spanish origin, filed a discrimination suit against OSU in August 2007, after having filed several internal complaints and a discrimination charge with the EEOC. Szeinbach filed the instant suit in August 2008, also after filing several internal complaints of retaliation and several charges with the EEOC. Szeinbach's second amended complaint alleged that OSU retaliated against her for supporting Seoane's discrimination charges against OSU, and for associating with Seoane, in violation of Title VII.

Szeinbach alleged that various COP faculty participated in the retaliation, including COP Professor Dr. Rajesh Balkrishnan and Dr. Milap Nahata, Chair of the COP's Division of Pharmacy Practice (PPD), both of whom are of Indian origin. Szeinbach alleged that she and Seoane opposed OSU's hiring of Balkrishnan in 2004; that Nahata and Balkrishnan favored faculty and students of Indian origin and treated faculty of Spanish origin less favorably, and that COP Dean Robert Brueggemier, Nahata and Balkrishnan retaliated against Szeinbach for supporting Seoane.

The same magistrate judge (MJ) presided over Seoane and Szeinbach's cases. During protracted and acrimonious discovery it became apparent that some emails of OSU faculty whom Seoane and Szeinbach alleged retaliated against them had been deleted. Both Seoane and Szeinbach moved for spoliation sanctions, but Seoane dismissed his suit in October 2009, before the MJ ruled. Szeinbach's amended motion for spoliation sanctions sought entry of judgment in her favor on liability, or alternatively, an adverse-inference jury instruction. The MJ denied Szeinbach's motion, but left open "the possibility that the jury should be informed of OSU's failure to timely implement

a plan to preserve documents relevant to this dispute" and noted that OSU advanced no reasonable

explanation for its failure to issue an effective preservation directive no later than August 2007,

when Seoane filed suit. Subsequently, however, the MJ granted OSU's motion for summary

judgment, concluding that Szeinbach failed to establish a prima facie case of retaliation because she

failed to demonstrate that she had been subjected to any adverse employment action.

## II

This court reviews de novo the magistrate judge's grant of summary judgment. *Hawkins v.*

*Anheuser Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). The district court must construe the

evidence and draw all reasonable inferences therefrom in the nonmoving party's favor. The issue

is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

We conclude that summary judgment was proper as to the attempted actions by Balkrishnan

and OSU that were not implemented, and OSU's alleged attempted termination of Szeinbach's

employment, but that granting summary judgment on the basis that there were no adverse

employment actions was improper with respect to Szeinbach's differential-salary-increases claim

and research- misconduct-investigation claim.

## III

The burden of establishing a *prima facie* Title VII retaliation case is not onerous. *DiCarlo*

*v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004), *Miller v. City of Canton*, 319 F. App'x 411, 420 (6th

Cir. 2009) (observing that Title VII's anti-retaliation provision is broader than Title VII's

discrimination provision, and that "[a] plaintiff easily makes out a *prima facie* case of retaliation.")

A plaintiff must demonstrate that: 1) she engaged in protected activity; 2) the defendant knew of this

exercise of protected rights; 3) the defendant thereafter took adverse employment action against her;

and 4) there was a causal connection between the protected activity and the adverse employment

action. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010). If the plaintiff

establishes a *prima facie* case, then the burden of production shifts to the defendant to "articulate

some legitimate, nondiscriminatory reason for its action." *Id*. at 492 (brackets omitted) (quoting

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant succeeds in doing

so, then the burden shifts back to the plaintiff to demonstrate that the defendant's "proffered reason

was not the true reason for the employment decision." *Id*. (internal quotation marks omitted).

The sole issue here, whether Szeinbach presented sufficient evidence to raise a genuine issue

of material fact regarding whether she suffered an adverse employment action, is governed by

*Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006):

> The antiretaliation provision protects an individual not from all retaliation,
> but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that
> a reasonable employee would have found the challenged action materially adverse,
> which in this context means it well might have dissuaded a reasonable worker from
> making or supporting a charge of discrimination.

> We speak of *material* adversity because we believe it is important to separate
> significant from trivial harms. Title VII, we have said, does not set forth a general
> civility code for the American workplace. An employee's decision to report
> discriminatory behavior cannot immunize that employee from those petty slights or
> minor annoyances that often take place at work and that all employees experience.
> The antiretaliation provision seeks to prevent employer interference with unfettered
> access to Title VII's remedial mechanisms. It does so by prohibiting employer
> actions that are likely to deter victims of discrimination from complaining to the

EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings . . . .

We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others.

*Burlington Northern*, 548 U.S. at 67-69 (internal citations and quotations omitted); *see also*, *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011) (reiterating that *Burlington Northern* prohibits any employer action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination, and observing that "[w]e think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired.")

## 1 - Differential Salary Increases

Szeinbach alleged that OSU retaliated against her by awarding her lesser pay increases than it would have absent her protected activities. The MJ concluded that the lesser pay increases were

not adverse employment actions because Szeinbach and similarly-situated faculty received pay increases that differed by de minimis amounts – approximately 1% of her salary.[3]

The MJ determined that because Szeinbach's salary was not decreased, and because similarly-situated faculty received raises that were greater than Szeinbach's by de minimis amounts, she had not established that her lesser merit-pay salary increases amounted to an adverse employment action.

In *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008), a Title VII *discrimination* case, this court held that the plaintiff employee's allegedly downgraded performance evaluation constituted an adverse employment action where the employee testified that he would have received a higher pay increase had he received a higher performance evaluation. This court observed that the plaintiff produced enough evidence to create a genuine issue of material fact regarding whether the

---

[3]In this regard, the MJ erroneously determined that he was bound to follow *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177 (6th Cir. 2004), a pre-*Burlington Northern* case that applied the now-disclaimed standard for adverse employment actions. This court has published no authority holding that *Mitchell* applies to Title VII *retaliation* claims post-*Burlington Northern*.

The MJ also erroneously relied on *Freeman v. Potter*, 200 F. App'x 439 (6th Cir. 2006), to support that *Mitchell* is still good law. *Freeman* is unpublished and did not involve Title VII retaliation, but rather age discrimination (ADEA) and Title VII gender discrimination. A Tenth Circuit case OSU relied on in addition to *Freeman* to support that *Mitchell* is still good law, *Somoza v. University of Denver*, 513 F.3d 1206, 1215-16 (10th Cir. 2008), is neither binding nor persuasive – it cited *Mitchell* to support that "subjective injuries, like a bruised ego, . . . do not rise to the level of dissuading a reasonable worker from making or supporting a charge of discrimination," and remarked in a footnote, without explanation, that "this pre-*Burlington Northern* precedent appears to retain its vitality." *Id.* at 1216 n.3. The remaining cases OSU relied on are not binding because they are unpublished or are not Sixth Circuit decisions. R. 182 at 20 n.10. OSU cites no published Sixth Circuit decisions to support that *Mitchell* properly applies to Title VII retaliation cases post-*Burlington Northern*.

downgraded performance evaluation had an adverse impact on his receipt of wages or salary. Had

the plaintiff received a higher performance evaluation, his salary increase would have been 3% –

whereas with the downgraded performance evaluation he received at most a 2% salary increase.

*White*, 533 F.3d at 402-03.

Given that the 1% salary-increase differential in *White* was held to "constitute[] a significant

change in employment status . . . or a decision causing a significant change in benefits," the district

court should not have granted summary judgment to OSU on Szeinbach's salary-differential claim

as to 2007 and 2008[4] on the grounds that OSU did not take an adverse employment action. On

remand, the district court can consider the other arguments that OSU advanced on summary

judgment on the salary-differential claim, such as the argument that there is no causal connection

between Szeinbach's smaller raises and any protected activity in which she engaged.

### 2 - Research-Misconduct Investigation of Szeinbach's Publications

OSU's research-misconduct investigation of Szeinbach resulted from Balkrishnan submitting

an internal "whistleblower" complaint in 2007 alleging suspected wrongful conduct by Szeinbach

regarding two of her academic publications. The MJ properly observed that Balkrishnan's

whistleblower complaint "activated an investigative procedure set forth in OSU's Research

Committee Interim Policy and Procedures Concerning Misconduct in Research or Scholarly

Activities." But this was no run-of-the-mill internal investigation. Before submitting his internal

whistleblower complaint, Balkrishnan emailed the editor of one of the journals that had published

---

[4]Szeinbach conceded that she could recover only for retaliation that occurred after December 15, 2006.

an article of Szeinbach's, and stated that her 2007 article had reported "exactly identical results just analysing the data slightly differently" from a 2005 article Szeinbach had co-authored that was published in a different journal, and that the 2007 article had failed to reference the 2005 article. On the same day, Balkrishnan emailed Chair Nahata the same allegations, characterizing this email as seeking Nahata's advice given Nahata's experience as an editor of an unrelated journal.

Balkrishnan also forwarded to Nahata, Dean Brueggemeier, and many other OSU faculty the email he had sent to the editor. In addition, Balkrishnan forwarded these emails to a group of professors at other universities, adding an allegation that Szeinbach had presented this research in 2005 and planned to present it again at the upcoming ISPOR meeting.

Szeinbach testified on deposition that a colleague at the University of Arkansas, Dr. Bradley Martin, told her at a professional meeting of the International Society for Pharmacoeconomics and Outcomes Research in 2006 that he was looking for somebody in Szeinbach's area (psychometrics) and invited her to visit his campus. Szeinbach testified that Martin ceased having employment discussions with her after he, Martin, received Balkrishnan's May 1, 2007 email.

When coworker retaliation is at issue, an employer will be liable if the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 347 (6th Cir. 2008)

Szeinbach presented sufficient evidence to establish an adverse employment action based on the conduct of Balkrishnan. Balkrishnan emailed faculty all over the country stating that Szeinbach committed research misconduct (and planned to further that research misconduct at the 2007 ISPOR conference) before OSU and the journal that published Szeinbach's article even investigated her alleged research misconduct. Szeinbach presented sufficient evidence to raise a genuine issue of material fact whether the investigation, which spanned almost two years, had a significant negative impact on her professional advancement, that is, constituted an adverse employment action.

Having been copied on Balkrishnan's emails, Nahata and Brueggemeier were aware of Balkrishnan's actions. Although OSU maintained that Brueggemeier disciplined Balkrishnan for this conduct, Balkrishnan denied receiving any such discipline, and OSU produced no documentary evidence of discipline; Brueggemeier's performance reviews and merit pay letters are devoid of any reference to discipline. Viewing the facts in a light most favorable to Szeinbach, a reasonable jury could conclude that Dean Brueggemeier and Chair Nahata "condoned, tolerated, or encouraged [Balkrishnan's] acts of retaliation." *Hawkins*, 517 F.3d at 347. The district court therefore should not have granted OSU summary judgment on Szeinbach's research-misconduct-investigation claim on the grounds that there was no adverse employment action. On remand, the district court can consider the other arguments that OSU advanced on this claim, such as (1) that there is no causal connection between the research-misconduct investigation and any protected activity in which Szeinbach engaged, and (2) that the relevant decision-makers during the research-misconduct investigation had no knowledge of Szeinbach's protected activity.

### 3 - Remaining Claims

Szeinbach presented insufficient evidence to support that OSU's reduction of her required class from four to two hours and suspension of student enrollment in the PPAD graduate program – structural changes in programs at the COP that were implemented based on recommendations of a task force – qualify as adverse employment actions under *Burlington Northern*. The same is true of her six claims of co-worker retaliation by Associate Professor Balkrishnan, five of which were mere attempts on his part to interfere with or circumscribe Szeinbach's teaching and advising of students and her participation in promotion and tenure decisions, and the sixth, his internal complaint against her, which resulted in no action against her. Finally, Szeinbach presented no evidence of injury or harm resulting from OSU's alleged attempted termination of her employment, thus that claim fails as well.

### IV

Regarding spoliation sanctions, Szeinbach will be free to request an adverse-inference jury instruction on remand, as the MJ's Order left open "the possibility that the jury should be informed of OSU's failure to timely implement a plan to preserve documents relevant to this dispute," and noted that OSU advanced no reasonable explanation for its failure to issue an effective preservation directive no later than August 2007, when Seoane filed suit. R. 80 at 10 n.33.

### V

For these reasons we affirm the dismissal of Szeinbach's claims, with the exception of her differential-salary-increases and research-misconduct investigation claims, which we reverse because she presented sufficient evidence to raise a genuine issue of fact regarding whether she suffered

adverse employment actions.  On remand, the district court may consider the other grounds that OSU

advanced in support of summary judgment on these claims including the remaining challenges to the

prima facie case and those to the last two steps of the *McDonnell Douglas* analysis.