McKEAGUE, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority that Congress has not expressly waived sovereign immunity for breach-of-settlement-agreement claims and that we should affirm the district court on that issue. However, because Taylor has not brought sufficient evidence that she suffered an adverse action or that any adverse action was causally linked to her protected activities, I would also affirm the district court’s grant of summary judgment as to Taylor’s retaliation claim.
I.
A.
While the majority correctly states that summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, FED.R.CIV.P. 56(c), and that we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party’s favor, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), for an issue of fact to be genuine, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In this ease, Taylor has not carried that burden.
As the majority notes, the only elements of the prima facie case at issue here are whether there was an adverse action taken against Taylor and whether Taylor established a causal link between any adverse action and her protected activity. The majority concludes that there were two adverse actions here: (1) “Taylor’s averment that she applied for and was rejected from fifty-two positions,” and (2) an imaginary negative recommendation from Taylor’s supervisor for one of those 52 positions.
In a retaliation claim, an adverse employment action is one that “well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.” Garner v. Cuyahoga Cnty. Juvenile Court, 554 F.3d 624, 639 (6th Cir.2009). “The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.” Burlington N. and Santa Fe *341 Ry. Co. v. White, 548 U.S. 58, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). It is not at all clear how either of the adverse actions found by the majority here satisfies these requirements.
B.
With respect to the 52 applications, Taylor’s declaration filed in her response to Geithner’s motion for summary judgment ambiguously states, “I have identified 52 positions in the Internal Revenue Service ... for which I submitted unsuccessful transfer or promotion applications after January 1, 2004.” The majority misehar-acterizes Taylor’s statement to mean that “she applied for and was rejected” from those positions. But that is not what Taylor stated. The fact that Taylor was “unsuccessful” in her applications could mean any number of things, including that her application was untimely, or she was not qualified for the position, or that the position had already been filled.
Notwithstanding this misconstruction of Taylor’s non-specific declaration, the majority rightly notes that apart from Taylor’s own self-serving statement, she has not adduced any admissible evidence regarding the timing of the alleged applications, whether she was even qualified for the jobs she applied for, whether the jobs were promotions or offered some other material benefit to Taylor, or whether in fact she really was rejected. Taylor tried to supplement her declaration with four Roster Standing Notifications from four different jobs she applied for, but the majority, admits we are not even considering those documents here because they were not presented to the district court until Taylor filed her motion for reconsideration.
Despite this acknowledgment by the majority that Taylor’s claims are completely unsubstantiated, the majority still concludes that “Taylor’s averment that she applied for and was rejected from fifty-two positions is plainly an adverse employment action under binding precedent.” Ante (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 638 (1998)). In Burlington Industries, the Supreme Court explained what a “tangible employment action” was for purposes of Title VII harassment or discrimination claims. In doing so, it offered the quote that the majority now employs stating that such an action “constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Id. at 761, 118 S.Ct. 2257. But the Court cited several other cases in an effort to more fully define “tangible employment action”:
Compare Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d 132, 136 (C.A.7 1993) (“A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation”), with Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (C.A.7 1994) (a “bruised ego” is not enough), Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (C.A.6 1996) (demotion without change in pay, benefits, duties, or prestige insufficient), and Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (C.A.8 1994) (reassignment to more inconvenient job insufficient).
Burlington Indus., Inc., 524 U.S. at 761, 118 S.Ct. 2257.
*342 The Court clearly thought that in order for an action to constitute a “tangible employment action” there needed to be some evidence that the action was adverse, ie., that it needed to be a termination, a demotion with evidence of lost wages, lost benefits, and so forth.
There is nothing in this definition that supports the majority’s conclusion here that Taylor’s own self-serving statement, unsubstantiated by any evidence that she was (1) qualified for any of the 52 jobs she applied for; (2) lost wages as a result of being “unsuccessful” in her applications; (3) lost any material benefits; (4) had her responsibilities diminished; or (5) lost a promotion opportunity, is sufficient to be an adverse employment action. See Hunter v. Sec’y of U.S. Army, 565 F.3d 986, 996 (6th Cir.2009) (“Hunter has not alleged that being transferred to a new work unit resulted in significantly different responsibilities, a change in benefits, or any other negative effect. In other words, Hunter has not shown that the transfer resulted in the type of ‘injury or harm’ that the Supreme Court in Burlington Northern said was necessary to sustain an action under Title VII.”); Freeman v. Potter, 200 Fed.Appx. 439, 442-43 (6th Cir.2006) (recognizing that an adverse action usually “inflicts direct economic harm” on the plaintiff) (quoting Burlington Indus., Inc., 524 U.S. at 761, 118 S.Ct. 2257).
Further, the Supreme Court has clearly recognized the problems with relying on a plaintiffs self-serving subjective belief that she' has suffered an adverse action. See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68-69, 126 S.Ct. 2405 (holding that the adverse action inquiry is an objective one thus, avoiding “the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiffs unusual subjective feelings.”); Mitchell v. Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir.2004) (asserting that an individual’s “subjective impression concerning the desirability of one position over another” is insufficient to render an employer’s action materially adverse.); Freeman, 200 Fed.Appx. at 442-43 (same).
Accordingly, Taylor’s non-specific and unsubstantiated assertion that she unsuccessfully applied for 52 positions is insufficient to constitute an adverse action.
Applying these same principles, the majority’s conclusion that Taylor suffered an adverse action because her employer might have given her a negative reference is also untenable. Initially, Taylor alleged that she suffered an adverse action based on her supervisor’s email stating she would not recommend Taylor for an IRS program. Later that same day, however, her supervisor retracted the email and sent a positive recommendation on Taylor’s behalf. (R.53-1, Page ID #441^3). The majority admits that this is not an adverse action because “it is unclear how Taylor was harmed by this letter and why it would have dissuaded her from filing discrimination complaints.” Yet, the majority ultimately uses this email to infer that at some prior indeterminate point, during which Taylor was allegedly being “rejected” for the 52 positions, her supervisor was asked for a recommendation and gave her a negative reference. But there is absolutely no admissible evidence either occurred.
Moreover, even if circumstantial evidence is sufficient to conclude Taylor’s supervisor gave her negative reference at some prior indeterminate point, certainly in order to show she was harmed by that alleged reference Taylor would be required to establish that it related to an actual employment prospect. See Abbott v. Crown Motor Co., 348 F.3d 537, 541 (6th Cir.2003) (“Crown conceded that Momson had informed a potential employer that he *343 had terminated plaintiff ‘during the busy season’ and that plaintiff ‘was not eligible for rehire.’ ”). But as discussed above, the only evidence here that there were real employment prospects is Taylor’s self-serving non-specific declaration.
Thus, even considering the evidence in the light most favorable to Taylor, the majority’s inference that Taylor’s supervisor gave her a negative reference at some point between July 2004 and September 2006, is nothing more than unsupported speculation, and does not establish there is a triable question of fact. Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586-587, 106 S.Ct. 1348.
C.
The majority’s causation analysis is even more tenuous. “To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.” Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir.2007) (quotation marks omitted). The majority correctly notes that in some instances temporal proximity between the protected activity and the adverse action may satisfy the causation prong of the prima facie test. Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 523-26 (6th Cir.2008).
At the summary judgment stage, we are to draw “reasonable inferences” from the available evidence. Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Here, the majority takes Taylor’s unsupported statement that she was denied 52 positions between January 2004 and September 2006 and extrapolates from that assertion, but without any supporting evidence, that Taylor must have been denied jobs at the rate of two per month. The majority next infers that because she was denied two jobs per month, she must have been denied jobs at the same time she filed her complaints to the EEO and Department of the Treasury in June 2004, September 2004, and April 2005. After making these multiple inferential leaps, the majority confidently concludes there was “a complete temporal overlap in the rejection from these positions and the protected activity.”
This same reasoning leads the majority to conclude that Taylor’s supervisor’s putative negative reference would also be “nearly contemporaneous with Taylor’s application” for any one of the 52 positions. Based on the evidence here — Taylor’s unsupported claim that she was denied 52 jobs and her supervisor’s email — these are not reasonable inferences supporting a conclusion that Taylor’s protected activity was the likely reason for the adverse action. Michael, 496 F.3d at 596.
We have previously supported temporal proximity as a basis for establishing causation. See, e.g., Mickey, 516 F.3d at 525 (“Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.”). Taylor has not cited any case, and the majority points to none, where temporal proximity was deemed adequately established based on a speculative averaging of wholly unsupported claims of multiple adverse actions.' In other words, the majority’s reasoning on this issue is supported neither by evidence nor law, and thus I respectfully dissent as to Taylor’s retaliation claim.