**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0305n.06
Filed: May 2, 2007

No. 05-6487

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JOHN S. BRENNAN,

     **Plaintiff-Appellant,**     **On Appeal from the United States
District Court for the Middle
v.**               **District of Tennessee at Nashville**

TRACTOR SUPPLY COMPANY,

     **Defendant-Appellee.**
_____/

**BEFORE: BOGGS, Chief Judge; COLE, Circuit Judge; ROSEN, District Judge.**[*]

  **ROSEN, District Judge**.

## I. INTRODUCTION

Plaintiff-Appellant John Brennan brought suit against his former employer,

Appellee Tractor Supply Company ("TSC"), claiming that TSC discriminated against him

on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA")

and the Tennessee Human Rights Act (the "THRA") when the company failed to promote

him in a timely manner. Brennan also claimed that TSC discriminated against him when

he was required to change jobs with a younger man, despite the fact that the job change

was a lateral move with no change in pay. The District Court for the Middle District of

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of
Michigan, sitting by designation.

Tennessee granted summary judgment in favor of TSC on both claims. Brennan now appeals the grant of summary judgment and the denial of his motion to amend or alter the judgment. For the reasons stated below, we AFFIRM the District Court's decisions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2000, John Brennan was hired by Tractor Supply Company as a Management Trainee. At the time, Brennan was 47 years old. Brian Hutchins, TSC's District Manager for the Middle Tennessee area, hired Brennan. While Brennan was working in the management training program, Hutchins allowed him to accept a part-time teaching position at Nashville State Technical Community College. Brennan's teaching assignment began in August of 2000.

After completing management training in September of 2000, Brennan was offered a Store Manager position at TSC's Nashville, Tennessee store. However, Hutchins did not believe that Brennan could do justice to a full-time position as a store manager while working part-time as a teacher. Not wanting to break the existing contract that he already had made with Nashville Tech, Brennan resigned from his position at TSC. Apparently, Brennan's teaching contract was not renewed in 2001 because Brennan called Hutchins several times in the fall of 2001 seeking re-employment with TSC.

In February of 2002, the Assistant Store Manager of the Dickson, Tennessee TSC store quit unexpectedly, and the Store Manager, Richard Ward, needed immediate help. Hutchins called Brennan and told him that there was a job opportunity available at the Dickson store. The next day, Ward interviewed Brennan and offered him a job. Ward

2

did not say what the job was, but Brennan accepted the job anyway. The job was the position of Team Leader, which was a sales position that carried some supervisory responsibilities, but not as many responsibilities as the Assistant Store Manager position.[1]

After 90 days, Brennan received a scheduled performance review in which the Store Manager, Richard Ward, gave him an overall rating of "Exceeds Expectations," and individual ratings of either "Good/Competent" or "Exceeds Expectations." Although his evaluation was positive, Ward told Brennan that he wanted him to show more leadership. In August 2002, Ward asked Brennan to move from working on the sales floor as a Team Leader to working as a Receiver.[2] This was a lateral move, although it necessitated the removal of some of Brennan's supervisory responsibilities on the sales floor.

Ward completed Brennan's next performance review in November 2002. Although Brennan received an overall rating of "Exceeds Expectations" in this second review, Brennan received only average marks in several areas and he was told that he needed improvement in four areas: (1) following and executing tasks according to the daily planner; (2) following up with customers, team members, and the manager on assignments; (3) completing tasks in a timely manner; and (4) showing independent judgment.

Ward testified that by the late spring or early summer of 2002, he was recommending to Brian Hutchins that Brennan be promoted to Assistant Store Manager

---

[1] The Assistant Store Manager position remained unfilled.
[2] Receiver is also a sales position, although the focus of a receiver's sales is special orders.

of the Dickson store. However, Hutchins did not agree to promote Brennan at that time.

Brennan first personally spoke with Hutchins about moving into a management role in December of 2002. Hutchins informed Brennan that, as a sales team member, there were only two ways he could become a Store Manager with TSC: he could either enroll in and successfully complete the TSC Management Training Program in Springfield, Tennessee,[3] or become an Assistant Store Manager in Dickson and continue training with Ward. Brennan remained at the Dickson store, hoping to be promoted to Assistant Store Manager.

In February 2003, Ward asked Brennan to change positions from his then current position as Receiver back to a Team Leader position. Brennan agreed, and upon his transfer, he received a 25-cent per hour pay raise, which gave him the highest hourly rate of any team member in the Dickson store.

In early March 2003, Brennan again discussed with Hutchins the possibility of a promotion to Assistant Manager. Hutchins told Brennan that Regional Vice President Charlie Chacon would be in Dickson to review the store around the first of April, and that when Chacon was there, he could sign off on promoting Brennan.

---

[3] Although Brennan had completed management training in September 2000 before resigning in order to pursue his teaching obligations at Nashville Tech, between Brennan's first and second term of employment, TSC changed its management training program due to the Company's sudden growth as a result of a merger with another retail company. *See* Hutchins Affidavit; Laurie Lance Affidavit. The Company also changed its recruiting focus -- it stopped recruiting on college campuses and began focusing on recruiting, hiring and promoting candidates to management positions based on their hard-lines retail and management experience. *Id.*

Later that month, Hutchins spoke on the phone with Chacon in preparation for his April visit to the Dickson store and discussed TSC management's view of the Dickson store. Management believed that the store was behind on a number of issues including receiving, price changes, and housekeeping. As a result of the general dissatisfaction with the store, Store Manager Ward was terminated for poor performance. (*See* Hutchins Affidavit, ¶ 3; Chacon Affidavit, ¶ 3.)

Chacon and Hutchins also discussed Brennan's desire for a promotion to Assistant Manager. Hutchins told Chacon that Brennan had potential but that he needed to improve his performance and sustain an improved performance for a longer period of time to show that he was qualified for management. Hutchins was particularly concerned because he did not believe that Brennan "had the same sense of urgency or fire in his work ethic" that he had shown as a management trainee two years earlier. (Hutchins Dep. pp. 49, 51. *See also* Hutchins Aff., ¶ 4; Chacon Aff., ¶ 4.)[4] In any event, TSC management concluded

[4] Although Brennan claims that Hutchins's Affidavit contradicts his prior deposition testimony concerning the conversation with Chacon, this is not correct. While it is true that in his deposition Hutchins stated that he could not recall all of the specifics of his discussion with Chacon about Brennan, he testified that

> "I'm sure we discussed [Brennan's] performance, his want, will and desire, but performance not matching that desire to move up. . . ." (Hutchins Dep. p. 72).

In his Affidavit, Hutchins stated,

> "In late March or early April 2003, I discussed the Dickson store with Charlie Chacon. . . . Around this time, I [also] had had discussions with Mr. Brennan about his interest in being promoted to management. I believed that Mr. Brennan had a lot of potential to become a part of the

5

that no one, including Brennan, would be promoted at the Dickson store until store conditions improved. (Hutchins Aff., ¶ 5; Chacon Aff., ¶ 5.)

On April 15, 2003, Ward was replaced as Dickson Store Manager by 31-year-old Richard Butler. The choice of Butler was made by Hutchins. TSC does not post Store Manager positions and Hutchins does not recall considering anyone other than Butler. Although Brennan contends that he should have been considered for this position, he acknowledges that both Store Managers and Assistant Store Managers need to be able to analyze certain types of TSC operational documents, such as profit and loss reports. Brennan also acknowledges that he lacked these skills until December of 2003, when he was given additional training by Butler.

On May 18, 2003, one of Brennan's female co-workers submitted a written complaint about Brennan's treatment of her after an incident in which Brennan yelled at her for 3 to 5 minutes as customers were walking by. Brennan's file reflects that he was given a verbal warning by following this incident. However, because Store Manager Butler was new to the store, the matter was handled by Brian Hutchins. Hutchins testified that the unprofessional manner in which Brennan dealt with the co-worker supported his belief that Brennan was not ready to be in management.

---

management team but I did not believe that he was ready at this time. I did not believe that Mr. Brennan had the same sense of urgency or fire in his work ethic as he did when he worked as a manager trainee in 2000. I shared my thoughts on Mr. Brennan with Mr. Chacon and he agreed with me that Mr. Brennan needed to improve his performance. . . ." (Hutchins Aff.).

6

In August 2003, Brennan was asked to switch jobs with a younger employee, Drew Adams, so that Brennan would work as a receiver and Adams would work as a team leader, because Adams had not been successful as a receiver. Although this was a lateral transfer that did not entail a pay cut, this transfer did effectively require Brennan to answer to Adams, the younger employee.

Later that same month, Hutchins was replaced as District Manager by 48-year-old Joel Matthews. Shortly thereafter, on September 13, 2003, Brennan called the Company's "Out Here Hotline," a toll-free hotline designed for team members to report their concerns, to complain that by TSC's failure to promote him to management, he had been discriminated against on the basis of his age. Laurie Lance of the Company's Human Resources Department investigated the complaint and concluded that Brennan's lack of promotion was due to matters of performance and attitude.

Then, on September 22, 2003, Brennan filed a charge of age discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission alleging age discrimination on the basis of the Company's reassignments and the Company's failure to promote him from December 20, 2002 to September 22, 2003.[5]

Brennan's job performance began a steady decline in September 2003. A customer called the Company's customer complaint line to complain about Brennan's rude behavior towards her, which occurred on two occasions while she was shopping at

---

[5] On December 12, 2003, Brennan amended his EEOC charge to indicate that the discrimination was a "continuing action."

the Dickson store. Brennan was given a written warning on September 16, 2003. Then, in October 2003, District Manager Matthews toured the store and noticed several problems with the Receiving Department, for which Brennan was responsible.

On November 14, 2003, Brennan was given another written warning, based on a truck driver's complaint that Brennan was rude and uncooperative, and based on Brennan's failure to complete paperwork in connection with merchandise Brennan had loaded onto a truck. This foul-up resulted in a $4,000 loss in store inventory. The Company could have fired Brennan, but instead, he was offered the choice of remaining as a receiver or moving to a team leader position, and receiving additional training in either position. Brennan chose the team leader position and received additional training with Butler.

On November 24, 2003, Brennan received a scheduled performance appraisal from Store Manager Butler. Butler noted in this appraisal that Brennan needed improvement in six of twenty areas of performance, including his manner of handling customers, paying attention to detail in performing assigned tasks, timely completion of work, and communicating with other members of the team. Brennan refused to sign this performance appraisal.

Nonetheless, Brennan continued his training with Butler and apparently improved his performance over the course of the next few months. When District Manager Matthews believed that Brennan had increased his performance to an acceptable level, Matthews discussed his progress with Regional Vice-President Chacon and they decided

8

to offer Brennan the position of Assistant Manager of the Dickson store. On February 17, 2004, Matthews offered Brennan the promotion. Matthews, however, informed Brennan that he would not receive an hourly raise at that time because he was already being paid more than any Assistant Manager in the district. Nevertheless, Brennan accepted the position.

On April 21, 2004, one of Brennan's female co-workers complained to the Company about Brennan's "cold and rude" behavior towards her after she had turned Brennan down for a date. On May 14, 2004, Brennan was counseled by Laurie Lance about the incident. He was required to attend a one-week management skills training class, which he subsequently completed. In the meantime, in a May 19, 2004 meeting, Joel Matthews told Brennan that he would need to improve the performance of the Dickson store before he would be considered for a Store Manager position.

Just before attending the management skills training program in mid-May, Brennan had interviewed for a position at Lowe's. Brennan was offered, and accepted, the Lowe's job, and submitted a voluntary letter of resignation to TSC on May 25, 2004. Brennan was replaced as Assistant Manager of the Dickson store by Joan Lane, who is older than Brennan.

During the period between December 15, 2002, when Brennan first expressed his interest in being promoted, and February 15, 2004, when Brennan was finally promoted to Assistant Store Manager at TSC's Dickson store, three other TSC employees were promoted to Assistant Store Manager positions. On April 21, 2003, 33-year-old Jerry

9

Bakker was promoted to Assistant Store Manager in the Clarksville, Tennessee store. On May 26, 2003, 38-year-old Ken Bailey was also promoted in the Clarksville store. And on June 8, 2003, 35-year-old Mike McCain was promoted in the Franklin, Tennessee store. Brian Hutchins, TSC's District Manager at the time, made all three of these promotion decisions with the input and agreement of each of the respective employees' Store Managers. Hutchins also promoted 31-year-old Richard Butler to the Store Manager's position in the Dickson store during this same time period.

On June 28, 2004, Brennan filed suit under the Age Discrimination in Employment Act and the Tennessee Human Rights Act in the Chancery Court for Dickson County, Tennessee. Brennan claimed that TSC discriminated against him on the basis of age because of the Company's failure to promptly promote him to Assistant Manager or Store Manager in TSC's Dickson, Tennessee. Brennan also claimed that TSC discriminated against him when he was required to trade his Team Leader position with a younger man's Receiver position. On July 27, 2004, TSC removed the action to the United States District Court for the Middle District of Tennessee. After the close of discovery, on June 1, 2005, TSC filed a Motion for Summary Judgment. On July 27, 2005, the District Court granted that Motion.

With respect to the failure to promote claims, the District Court determined that Brennan made out a *prima facie* claim of age discrimination but found that TSC rebutted those claims by proffering legitimate non-discriminatory reasons for not promoting him prior to February 2004, and that Brennan failed to establish that those reasons were

10

pretextual. With respect to the position-trade claim, notwithstanding Brennan's contention that the position change was "effectively a demotion," because the position change was a lateral one and did not result in any change in pay or benefits, the District Court held that Brennan's reassignment to the position of receiver was not an adverse employment action. Therefore, the Court determined that Brennan failed to make out a *prima facie* claim. Accordingly, the District Court ordered that all of Brennan's claims be dismissed.

Brennan subsequently filed a Fed. R. Civ. P. 59(e) Motion to Amend or Alter Judgment, arguing that the District Court erred in finding that TSC's proffered non-discriminatory reasons were legitimate and in finding that he failed to prove pretext. On August 12, 2005, the District Court entered a Memorandum and Order denying the Rule 59(e) Motion.

Brennan now appeals the District Court's decisions.

## III. ANALYSIS

## A. STANDARD OF REVIEW

This court reviews a district court's summary judgment decision *de novo,* using the same standard as the district court. *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003), *cert. denied,* 541 U.S. 1027 (2004); *see also Peters v. Lincoln Elec. Co*., 285 F.3d 456, 465 (6th Cir. 2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

11

the moving party is entitled to judgment as a matter of law." *See Du Pont,* 344 F.3d at 584; *Blankenship v. Parke Care Ctrs., Inc*., 123 F.3d 868, 871 (6th Cir. 1997), *cert. denied*, 522 U.S. 1110 (1998); Fed. R. Civ. P. 56(c).

However, in ruling on a district court's grant of summary judgment, an appellate court does not have to rely on the same reasons that persuaded the lower court. *See City Mgmt. Corp. v. U.S. Chem. Co.,* 43 F.3d 244, 251 (6th Cir.1994) (an appellate court may affirm a decision of the district court if that decision is correct for any reason, including a reason not considered by the district court). *See also Airline Prof'ls Ass'n of Int'l. Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc*., 332 F.3d 983, 986 (6th Cir. 2003); *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981) (the appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous bases relied upon by the district court, provided the opposing party has had an opportunity to respond to the new theory.)

**B.**     **THE ADEA AND THE TENNESSEE HUMAN RIGHTS ACT -- GENERALLY APPLICABLE STANDARDS**

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Similarly, the THRA provides that an employer may not lawfully "fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such

individual's race, creed, color, religion, sex, *age* or national origin." Tenn. Code Ann. §

4-21-401(a)(1) (emphasis added). Because Plaintiff Brennan's claims of age

discrimination under both the ADEA and the THRA require the same standards of proof,[6]

they will be analyzed together. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th

Cir. 2001); *Anthony v. BTR Automotive Sealing Sys.*, 339 F.3d 506, 514 (6th Cir. 2003).

In order to establish employment discrimination under both the ADEA and the

THRA, the plaintiff must either present direct evidence of discrimination or introduce

circumstantial evidence that would allow an inference of discriminatory treatment in

accordance with the *McDonnell Douglas/Burdine*[7] burden-shifting framework. *Anthony,*

339 F.3d at 514. In this case, Brennan has presented no direct evidence and relies entirely

upon circumstantial evidence.

## C.     BRENNAN'S FAILURE TO PROMOTE CLAIMS

Brennan makes two "failure to promote" claims based upon (1) TSC's failure to

promote him to the position of Assistant Store Manager at the Dickson store sooner than

---

[6] The stated purpose and intent of the THRA is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws. *See* Tenn. Code Ann. § 4-21-101(a)(1); *Bennett v. Steiner-Liff Iron & Metal Co.*, 826 S.W.2d 119, 121 (Tenn.1992); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Therefore, Tennessee courts often analyze age discrimination claims brought under the THRA utilizing federal authority interpreting the ADEA. *See Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 96 (Tenn. App.1984); *Newsom v. Textron Aerostructures, a Div. of Avco, Inc.*, 924 S.W.2d 87, 97 (Tenn. App. 1996); *Richardson v. CVS Corp.*, 207 F. Supp. 2d 733, 744 (E.D. Tenn. 2001).
[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

13

it did,[8] and (2) TSC's failure to promote him to Store Manager of the Dickson store.

These two claims will be addressed separately.

1. **TSC's Failure to Promote Brennan to Assistant Store Manager Before February 2004**

    a. **Brennan's Prima Facie Case of Discrimination**

To make out a *prima facie* age discrimination claim of failure to promote under the

*McDonnell Douglas/Burdine* framework, the plaintiff must show showing that (1) he is a

member of the protected class; (2) he applied for, and did not receive, a promotion; (3) he

was qualified for the position sought; and (4) similarly-situated employees not in the

plaintiff's protected class received promotions. *Anthony,* 339 F.3d at 515; *Coomer v.*

*Bethesda Hosp., Inc.*, 370 F.3d 506, 515 (6th Cir. 2003).[9]

With respect to Brennan's claim concerning promotion to Assistant Store

Manager, the parties do not dispute that Brennan satisfies the first three criteria of the

*prima facie* case. Brennan was 50 years old in the spring of 2003, and, thus, he was a

member of the protected class. Brennan also meets the second criterion, despite the fact

that Brennan did not apply for either the position of Store Manager or of Assistant Store

---

[8]  As noted, Brennan ultimately was promoted to Assistant Store Manager in February
2004. His complaint is that he should have been promoted sooner.
[9]  Brennan's claim concerning his August 2003 re-assignment to the Receiver position is
more properly analyzed under a familiar variation of the *McDonnell Douglas* test under
which he must establish that (1) he is a member of a protected class; (2) he was subjected
to an adverse employment action; (3) he was qualified for the position; and (4) he was
treated differently from similarly-situated non-protected class employees. *See Mitchell v.*
*Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004); *Grosjean v. First Energy Corp.*, 349
F.3d 332, 335 (6th Cir. 2003), *cert. denied*, 541 U.S. 1010 (2004); *Policastro v.*
*Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

Manager, because these positions were not posted, and there were no formal application procedures. In failure to promote cases where the employer does not notify its employees of the available promotion or does not provide a formal process for application, a plaintiff does not have to establish that he applied, and was considered for, the promotion. *Dews v. A.B.Dick, Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000). Rather, the company has a duty to consider all who might reasonably be interested in a promotion were its availability made generally known. *Id.* at 1022. In this case, District Manager Brian Hutchins was well aware of Brennan's interest in a promotion and, in fact, discussed the possibility of promoting Brennan with the Regional Vice President of TSC, Charlie Chacon.

Brennan also meets the third criterion because he possessed the objective qualifications for a retail management position. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (holding that a plaintiff can meet his burden to show that he is "qualified" under the *McDonnell Douglas* paradigm by presenting credible evidence that his qualifications are "at least equivalent to the minimum objective criteria required for employment in the relevant field" and explaining that relevant criteria in this inquiry are the plaintiff's "education, experience in the relevant industry, and demonstrated possession of the required general skills").

The parties do, however, dispute whether Brennan satisfied the fourth *McDonnell Douglas* criterion, i.e., whether Brennan established that similarly-situated persons outside his protected class were promoted to positions for which he was qualified. Brennan compared his treatment to that of three other TSC employees -- Jerry Bakker,

15

Ken Bailey and Mike McClain -- who were all younger than he was, who were promoted to Assistant Store Manager in other TSC stores in the District during the period of time when he was denied a promotion at the Dickson store.

With respect to the Assistant Manager position, the District Court found that Brennan had satisfied this fourth criterion. Relying upon *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), the District Court held that younger employees from other TSC stores (i.e., stores other than the Dickson, Tennessee store where Brennan worked) who were promoted to assistant store manager positions between December 2002 and February 2004 were "similarly-situated" to Brennan, and, therefore, could be used as comparables.

In *Ercegovich*, the plaintiff was the only person nationwide in the Goodyear company who held the position of Human Resources Development Quality Systems Coordinator. Ercegovich worked out of Goodyear's Akron, Ohio Human Resources Development office and was responsible for the training of retail managers throughout the country. 154 F.3d at 348. When Goodyear decided to reorganize and downsize its Human Resources Development department and reassign the responsibility for the training of retail store managers to district managers, Ercegovich's position was eliminated. *Id.* at 349. Ercegovich was not offered the opportunity to transfer to another position within the company; rather, he was offered only the choice to accept recallable layoff status or to retire. *Id.* Claiming that younger employees whose Human Resources

16

Development positions at the Akron location had also been eliminated received transfers to other positions in the company, Ercegovich filed an ADEA action. *Id.* at 349-50. As evidence of age discrimination, Ercegovich pointed to 40-year-old Paul Evert, who, after his position of Manager of Human Resources was eliminated, received a transfer to a position within the Retail Sales Division, and 28-year-old Karen Cohn, who was transferred to the position of Personnel Administrator after the elimination of her position as Personnel Development Specialist. *Id.* at 349.

Goodyear argued that because Ercegovich could not show that the two employees with whom he sought to compare his treatment were "similarly-situated," as that term was defined in *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992),[10] he failed to make out a *prima facie* case. The district court agreed, concluding that Ercegovich was not similarly-situated to the other employees because "neither of [the other younger two employees] performed the same job functions as Ercegovich." *Id.* at 352.

A panel of this court reversed, holding that *Mitchell*'s rule that a plaintiff must show that his purported "comparables" are "similarly-situated in all respects" should not be read too narrowly. *Id.* The court reasoned:

---

[10] In *Mitchell*, we held:

> [T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

964 F.2d at 583 (citations omitted).

17

[I]f the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a prima facie case (absent direct evidence of discrimination.). . . . Rather, . . . as previously held by this court in *Pierce* [*v. Commonwealth Life Ins. Co*., 40 F.3d 796 (6th Cir. 1994)], we simply require that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects.

*Id.* at 353.

The court then proceeded to examine the evidence of Ercegovich's comparables and determined:

Because the positions previously held by Ercegovich, Evert and Cohn were all related human resources positions that were all eliminated pursuant to a general reorganization of the department of Human Resources Development at Goodyear's Akron location, we conclude that Ercegovich was sufficiently similarly-situated to Evert and Cohn to satisfy the fourth component of Ercegovich's prima facie case.

*Id.*

Applying *Ercegovich*, the District Court in this case held that even though Messrs. Bakker, Bailey and McClain worked under, and were evaluated by, different Store Managers, because the ultimate promotion decision in each case was made by the same District Manager, these three younger TSC employees were sufficiently similarly-situated to be used by Brennan as comparables. Accordingly, after examining the relative qualifications of Brennan and his comparables, the court concluded that Brennan had made out a *prima facie* case of failure to promote based upon TSC's failure to promote him to the position of Assistant Store Manager before February 2004.

Although we may question whether a meaningful comparison can be made of employees who worked in different stores and whose performance ratings which form the

18

basis of comparison were made by different store managers, we need not decide here whether Plaintiff's purported comparables in this case are sufficiently "similarly situated" because, even if this fourth element of a *prima facie* claim is satisfied, as discussed below, TSC has proffered a legitimate, non-discriminatory reason for not promoting Brennan before February 2004, and Brennan has failed to establish that that reason is pretextual. For this same reason, we need not engage in an exhaustive analysis as to the precise contours of the relationship between a *Mitchell* analysis and that utilized in *Ercegovich*. Although we recognize that, in some cases, there may be tension between *Mitchell* and *Ercegovich* in evaluating whether a plaintiff and his or her proffered comparables are "similarly situated," it is unnecessary here to explore this challenging area at any length.

**b.** **TSC Articulated a Legitimate, Non-Discriminatory Reason for its Decision**

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 1094-95 (1981); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 265 (6th Cir.1986), *cert. denied,* 480 U.S. 919 (1987); *Coomer v. Bethesda Hosp.,* 370 F.3d at 511. TSC asserts that in light of Brennan's well-documented history of inconsistent performance and attitude problems, neither of Brennan's District Managers nor his Regional Vice President believed that he was ready for a management position prior to February 2004. In particular, TSC states that several things affected the timing of Brennan's promotion,

19

including: (1) Brennan's November 2002 performance evaluation that documented multiple areas in which he needed improvement; (2) Hutchins's conversations with Brennan regarding areas of his performance that needed improvement; (3) TSC management's determination that no one would be promoted at the Dickson store, including Brennan, until the Store conditions improved; (4) TSC's belief that Brennan need to improve his performance, sustain an improved performance for a longer period of time, and develop a sense of urgency in his work ethic; (5) a co-worker's complaint made in May 2003 that Brennan made rude, unprofessional comments to her in front of customers and co-workers; (6) a September 2003 customer complaint regarding Brennan's rude behavior; (7) problems documented in the Receiving department for which Brennan was responsible; (8) Brennan's discipline in November 2003 for a confrontation between Brennan and another employee and Brennan's failure to follow proper shipping procedures; and (9) because, prior to January 2003, Brennan lacked the knowledge required to analyze certain TSC documents, such as profit and loss reports.

### c.    Brennan Has Failed to Establish Pretext

TSC having articulated a legitimate non-discriminatory reason for its actions, the burden shifts back to Plaintiff Brennan to produce sufficient evidence from which the jury may reasonably reject his employer's explanation. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994).

"Pretext can be established by (1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or by (2) an indirect

20

evidentiary showing that the employer's explanation is not credible." *Peters,* 285 F.3d at 470. "However, [m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.*at 471. As indicated above, here Brennan has no direct evidence of discrimination or discriminatory animus. Therefore, to establish pretext Brennan must show that the TSC's reasons are not credible.

In order to attack the credibilty of the employer's non-discriminatory reasons, Brennan must demonstrate by a preponderance of the evidence that the proffered reasons had no basis in fact, did not actually motivate the defendant's challenged conduct, or were insufficient to warrant the challenged conduct. *Manzer,* 29 F.3d at 1084; *Seay v. Tenn. Valley Authority,* 339 F.3d 454, 463 (6th Cir. 2003). A showing that a proffered reason had "no basis in fact" consists of evidence establishing that the proffered reasons for the employer's decision never happened, or are factually false. *Manzer*, 29 F.3d at 1084. To make a showing that the proffered reasons "did not actually motivate the employer's conduct," the plaintiff must present evidence "which tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.*

We have previously stated that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler,* 317 F.3d at 576; *Smith v. Chrysler Corp.,* 155 F.3d 799, 907 (6th Cir. 1998). Finally, a showing that the proffered reasons were "insufficient to motivate the employer" consists of

21

evidence that other employees, particularly employees not in the protected class, were not treated the same way, even though they engaged in substantially identical conduct. *Manzer,* 29 F.3d at 1084.

In sum, Brennan must provide sufficient evidence that would allow a reasonable jury to reject the employer's reason for its action and conclude that intentional, age-based discriminatory animus was TSC's true motivation for refusing to promote Brennan. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). As the District Court observed, Brennan has not met this burden.

Brennan makes four arguments why TSC's proffered non-discriminatory reason is not credible: (1) that District Manager Brian Hutchins "had a palpable dislike for Brennan"; (2) that Hutchins's deposition testimony was "evasive and inconsistent"; (3) that Hutchins's representations that Brennan was going to be promoted are inconsistent with his belief that Brennan had performance and attitude deficiencies; and (4) Brennan's performance deficiencies and TSC's decision not to promote anyone in Dickson until the store conditions improved were "not a sufficient motive to deny Brennan promotion."

However, it is well-settled that a court "may not reject an employer's explanation [of its action] unless there is sufficient basis *in the evidence* for doing so." *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 600 (6th Cir. 2001) (quoting *Manzer*, 29 F.3d at 1083 (emphasis in original)); *see also Barhart v. Pickrel, Shaeffer & Ebeling Co., L.P.A.* 12 F.3d 1382, 1394-95 (6th Cir. 1993) (holding that the district court properly granted defendants' motion for summary judgment on plaintiff's ADEA claim where

22

plaintiff failed to sufficiently demonstrate through record evidence that defendants' legitimate non-discriminatory reasons for discharge were pretext for age discrimination.) The record here simply does not support any of Brennan's arguments.

First, there is no legally cognizable evidence in the record establishing that "Hutchins had a palpable dislike for Brennan." Brennan cites the Affidavit of former Store Manager Richard Ward as support for this argument. Ward's Affidavit, however, says only that when he recommended to Hutchins that Brennan be promoted, "Mr. Hutchins was very opposed to the idea . . . ." (Ward Aff., ¶ 5). This, of course, does not necessarily mean that Hutchins "disliked" Brennan, only that he opposed his promotion. But, even if Hutchins had expressed a "dislike" for Brennan, such a statement would be nothing more than an opinion, and "opinion evidence do[es] not satisfy Rule 56(c) and must be disregarded." *State Mutual Life Assurance Co. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979). Even more to the point, even if Hutchins had, in fact, "disliked" Brennan, there is no evidence that his dislike for Brennan was in any way related to Brennan's age or in any way reflected age animus. Without this, it is simply a personal distaste, and wholly insufficient to support an age bias claim.

Similarly, Brennan's argument that Hutchins's deposition testimony and his affidavit testimony are not worthy of credence because of purported inconsistencies therein is not supported by the record. Although Brennan claims that Hutchins's Affidavit contradicts his prior deposition testimony concerning the conversation with Regional Vice President Chacon, this is not accurate. As noted above, while it is true that

23

in his deposition Hutchins stated that he could not recall all of the specifics of his discussion with Chacon about Brennan, he testified that

> "I'm sure we discussed [Brennan's] performance, his want, will and desire, but performance not matching that desire to move up. . . ." (Hutchins Dep. p. 72.)

In his Affidavit, Hutchins stated,

> "In late March or early April 2003, I discussed the Dickson store with Charlie Chacon. . . . Around this time, I [also] had had discussions with Mr. Brennan about his interest in being promoted to management. I believed that Mr. Brennan had a lot of potential to become a part of the management team but I did not believe that he was ready at this time. I did not believe that Mr. Brennan had the same sense of urgency or fire in his work ethic as he did when he ward as a manager trainee in 2000. I shared my thoughts on Mr. Brennan with Mr. Chacon and he agreed with me that Mr. Brennan needed to improve his performance. . . ." (Hutchins Aff.)

Although Hutchins's affidavit presents perhaps an expansion of his deposition testimony, there is hardly an inconsistency between the two.

Brennan's argument that his performance deficiencies were not a sufficient basis for TSC to deny him a promotion prior to February 2004 amounts to nothing more than his disagreement with, and questioning of, the business judgment of his employer. *See Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 490 (6th Cir. 2000) (soundness of employment decision may not be challenged as a means of showing pretext). Brennan does not deny that his performance appraisals, which although reflecting some high marks of "exceeds expectations," also reflect a number of significant areas in which he "need[ed] improvement." Furthermore, Brennan admits that he is unaware of how his performance and attitude impacted TSC's opinion of his promotability. His personal

24

opinion of his own performance is insufficient to establish pretext.

Which leaves Brennan with the evidence of the promotion of his three comparables. Although he claims that he had superior qualifications (e.g., that he has an MBA while his comparables have no advanced degrees), Brennan has come forward with no evidence to show that the younger employees who were promoted had the same or equivalent history of performance and attitude deficiencies as he did. Furthermore, although Brennan waited longer than Bakker, Bailey and McClain to be promoted,[11] the record also establishes that other younger TSC employees waited longer than Brennan before they were promoted to Assistant Store Manager positions. For example, Terry Cannon, who is 41 years old, waited more than *four years* to get promoted, and 33-year-old Tania Leonard waited more than *five years* before she was promoted. The fact that younger employees had to wait longer than Brennan before they were promoted negates any suggestion that Plaintiff's promotion was delayed predominantly because of his age.

The foregoing demonstrates that the District Court did not err in granting Defendant TSC's motion for summary judgment with regard to Brennan's claim that TSC discriminated against him because of his age by not promoting him to the Assistant Store Manager position before February 2004.

**2.     TSC's Failure to Promote Brennan to the Position of Store Manager**

Brennan also claims that TSC discriminated against him on the basis of his age

---

[11]  Brennan was promoted 2 years (i.e., 24 months) after he was hired. Mr. Bakker was promoted 20 months after he was hired, Mr. Bailey was promoted 18 months after he was hired, and Mr. McLain was promoted within 12 months.

when in the spring of 2003, it failed to promote him to the Store Manager position after Richard Ward was fired and, instead, awarded the position to Management Trainee Richard Butler, who was, at the time, 31 years old.

As with the failure-to-promote to Assistant Store Manager claim, the parties dispute Brennan's satisfaction of the fourth *prima facie* element, i.e., that similarly-situated younger employees were promoted to Store Manager positions while Brennan was not.

During the time period in question, TSC promoted only two persons to Store Manager, 31-year-old Richard Butler and 51-year-old Rex Easterly.[12] Brennan claims that because (in his opinion) he had superior qualifications to Butler's, he should have been promoted from his then sales position as Team Leader to Store Manager of the Dickson store instead of Butler.

However, Brennan does not dispute that there were only two ways in which he could become a Store Manager with TSC: he either had to first become an Assistant Store Manager or he had to have successfully completed the Company's management training program. At the time of Butler's promotion, Brennan had not yet become an Assistant Store Manager.

Although both Butler and Brennan had completed management training at TSC, they were not truly "similarly-situated." Brennan did his management training in the summer of 2000, and it is undisputed that after that time, TSC restructured and formalized

---

[12] Brennan fails to mention Easterly, who is *older* than Brennan, as a comparable.

26

its Management Trainee program and decided that completion of the new training program would be required before a sales employee could be promoted to a management position. It is undisputed that Butler, unlike Brennan, had completed the restructured management training before he was promoted to Store Manager. Furthermore, despite his younger age, it is undisputed that Butler had substantially more prior retail management experience than Brennan. Therefore, the two were not "similarly-situated in all relevant respects."

However, as with the Assistant Store Manager position, even assuming *arguendo* that Brennan had satisfied all of the elements of a *prima facie* case, TSC articulated a legitimate non-discriminatory reason for not promoting Plaintiff to Store Manager -- i.e., his lack of management training and experience and history of inconsistent performance -- and Brennan cannot show that TSC's proffered non-discriminatory reasons are pretextual.

Even accepting that Butler and Brennan were both "qualified" for the position, as noted above, their qualifications were not identical. TSC states that one reason it chose Butler was because Butler had more retail management experience than Brennan. Brennan counters that he had more education than Butler. It is well-settled, however, that management retains the right to choose from among qualified candidates, particularly in selecting management-level employees, as long as the reasons for its choices are not discriminatory; it is not the role of the court to question a business's choice from among qualified candidates. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). Furthermore, a

27

plaintiff's "perception of his competence, and the incompetence of those competing against him, is irrelevant." *Id.*

TSC has also stated that, unlike Butler, Brennan did not at the time possess the operational knowledge that was required to analyze TSC operational documents. Indeed, Brennan himself admits that he did not have these skills until December 2003, after receiving further training from Butler.

In sum, Brennan is unable to produce probative evidence to rebut TSC's legitimate, non-discriminatory reasons for hiring Butler as Store Manager rather than promoting Brennan.

## D.    BRENNAN'S "UNLAWFUL DEMOTION" CLAIM

Brennan also claims that he was discriminated against when he was asked to change jobs with a younger man, Drew Adams, in August 2003. Brennan was asked to trade his Team Leader position for Adams' position of Receiver because Adams had not been successful as a Receiver. Brennan previously had succeeded as a Receiver at TSC.

Brennan concedes that the job transfer did not involve a decrease in pay, and was a lateral transfer within TSC. (Brennan Dep., p. 135.) Nonetheless, he claims that the transfer amounted to a discriminatory demotion because it resulted in Brennan being required to report to Adams, a younger man.

It is fundamental that to make out a *prima facie* claim of discriminatory treatment, the plaintiff must show that he suffered an "adverse employment action." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2005). Ordinarily, reassignments without

28

changes in pay or in schedules are not sufficient to constitute an adverse employment action in discrimination claims. *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987); *Policastro v. Northwest Airlines*, 297 F.3d 535, 539 (6th Cir. 2002) ("Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions."); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405, 2417 (2006) ("To be sure, reassignment of job duties is not automatically actionable."). An adverse employment action is a "materially adverse change in the terms or conditions of. . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). "Materially adverse" job changes "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Mitchell*, 389 F.3d at 182. "[A]n employee's subjective impressions as to the desirability of one position over another are not relevant." *Policastro,* 297 F.3d at 539. *Cf.*, *Burlington Northern*, 125 S. Ct. at 2417 (noting in the context of a Title VII retaliation claim that "[w]hether a particular reassignment is materially adverse depends on the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position considering all the circumstances." (internal punctuation and citation omitted)).

In this case, the only aspect of the Receiver job that Brennan claims was "adverse" is that he was required to report to a younger man as a result of the job change. As the District Court found, this alteration does not rise to the level of being "materially adverse." *See Mitchell*, 389 F.3d at 183 ("[A] bruised ego is not enough to constitute an

29

adverse employment action.")[13]

The foregoing demonstrates that the District Court did not err in dismissing Brennan's age discrimination claim based upon his August 2003 transfer to the Receiver position.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the District Court's decisions granting summary judgment in favor of Defendant Tractor Supply Company and denying Plaintiff Brennan's Rule 59(e) motion to amend or alter judgment are AFFIRMED.

---

[13] Although Brennan attempts to cast this lateral job change as a "demotion," this contradicts his own statement in his deposition, in which he testified that his previous transfer *from* Receiver *to* Team Leader was "unwarranted, grossly unfair, and unjustly punitive," which suggests that he viewed the Receiver job as a more desirable position. Furthermore, Brennan was transferred to the position of Receiver because Adams was failing in the position, so TSC wanted to transfer Adams to the position of Team Leader. Thus, it follows that, contrary to Brennan's bare assertion that as a result of his transfer to Receiver he had significantly diminished responsibilities, it is unlikely that the position of Receiver would entail *fewer* responsibilities than that of Team Leader, or TSC would not have transferred an employee who was failing in the position of Receiver to a Team Leader position. Therefore, even if we were to extend the recent *Burlington Northern* "materially adverse" standard to Brennan's age claims, Brennan's situation cannot be deemed "materially adverse."